**COLUMBIAN ROPE COMPANY,**
Appellant–Defendant,

v.

**Vernon C. TODD, Jr., Appellee–Plaintiff.**

No. 05A04–9301–CV–11.

Court of Appeals of Indiana,
Fourth District.

March 29, 1994.

Transfer Dismissed July 29, 1994.

George E. Purdy, George T. Patton, Jr., Bose, McKinney & Evans, Indianapolis, for appellant.

P. Gregory Cross, Cross, Marshall, Schuck, Deweese, Cross & Feick, Muncie, William E. Ervin, Ervin & Barry, Hartford City, for appellee.

RILEY, Judge.

## STATEMENT OF THE CASE

Defendant–Appellant Columbian Rope Company (Columbian) appeals a judgment in favor of Plaintiff–Appellee Vernon C. Todd (Todd). We affirm.

## ISSUES

Columbian raises the following restated issues:

1. whether the trial court erred in allowing Todd's expert to testify regarding the adequacy of Columbian's product warnings;

2. whether the trial court erred in admitting rope samples into evidence; and

3. whether the trial court erred in denying Columbian's Ind.Trial Rule 50(A) motion at the close of Todd's case-in-chief.

## FACTS AND PROCEDURAL HISTORY

In May, 1985, Todd, an experienced tree worker, was hired to cut down a tree located on property owned by Jan Etchison. On the morning of May 19, 1985, Todd arrived at Etchison's property to perform the work pursuant to a private agreement with Etchison. He used ½ inch manila rope borrowed from his regular employer, Townsend Tree Service, to climb approximately sixty feet up into the eighty-foot tree. Upon reaching this height, Todd determined that he would rappel down to the ground and cut the tree down all at once. Todd rappelled down twenty-five to thirty feet on the first descent. He started to kick out again and the rope broke. Todd fell between thirty and thirty-five feet to the ground below. He landed on his buttocks and sustained multiple injuries.

Prior to filing a product liability action against Columbian, Todd took the two pieces of the separated rope, measuring approximately ten feet and one hundred and forty feet in length, to a law firm. The law firm sent both portions of Todd's rope and a section of new rope (exemplar) to a consulting engineering firm, Keeler–Webb Associates. Keeler–Webb sent the ten foot section of the rope, along with the exemplar, to other experts for testing. Sometime thereafter, Keeler–Webb lost the one hundred and forty foot section of rope it had retained.

On May 17, 1987, Todd filed a complaint alleging that Columbian had placed a defective rope into the stream of commerce. Over five years later, on October 6, 1992, Columbian filed a motion *in limine* requesting the trial court to prohibit Todd from presenting expert testimony concerning the condition of the rope used at the time of the accident.

On October 14, 1992, the trial court held a hearing on the motion *in limine*. Columbian argued that the trial court should not allow

Jim McCann (of Keeler–Webb) to testify about any tests he did on the lost evidence or any independent calculations he may have made. On October 16, 1992, the trial court issued a written ruling on the motion *in limine*. In the ruling, the trial court stated that it would not prohibit all expert testimony but would prevent "the admissibility of certain tests that the defendants were not given the ability to duplicate as a result of the destruction or loss of the rope." (R. 93).

At trial, the court allowed McCann to testify, over Columbian's objection, about the adequacy of warnings provided by Columbian regarding the amount of load that Columbian's ½ inch manila rope could withstand. McCann did not testify regarding any tests performed on the original rope.

At the conclusion of Todd's case, Columbian moved for a verdict on the evidence pursuant to T.R. 50. The motion was denied.

The jury found that Columbian was liable for Todd's injuries and awarded damages of $207,039.36. The trial court then entered judgment in accordance with the jury's verdict. Columbian now appeals that judgment.

## DISCUSSION AND DECISION

### I. McCANN'S TESTIMONY

Columbian contends the trial court committed reversible error in allowing McCann to testify about the inadequacy of the warnings accompanying Columbian's ½ inch manila rope. Columbian argues that McCann's testimony was prejudicial because there was a possibility that his "mental impressions" garnered from inspection of the original rope would seep into his trial testimony about warnings.

Evidentiary determinations are committed to the trial court's discretion, and we will reverse the determination only upon a showing of an abuse of discretion. *Brown v. Terre Haute Regional Hosp.* (1989), Ind. App., 537 N.E.2d 54, 60. An abuse of discretion occurs only if the court's determination is clearly against the logic and effect of the facts and circumstances before the court. *McCullough v. Archbold Ladder Co.* (1993), Ind., 605 N.E.2d 175, 180. A trial court has the discretion to weigh the probative value of

testimony against the possible prejudice of the testimony. *Beresford v. Starkey* (1990), Ind.App., 563 N.E.2d 116, 125, rev'd on other grounds but expressly affirmed on this issue, (1991), Ind., 571 N.E.2d 1257.

In its motion *in limine*, trial objection, appellate brief, and oral argument to this court, Columbian emphasized the need to "level the playing field." *See* Appellant's Brief at 36. This goal was pursued in *Nally v. Volkswagen of America* (1989), 405 Mass. 191, 539 N.E.2d 1017, a case relied upon by the trial court in ruling on Columbian's motion *in limine*. In *Nally*, the administrator of an automobile passenger's estate brought a wrongful death action against the automobile manufacturer and seller. The manufacturer moved for preclusion of the testimony of Nally's expert because the expert had destroyed significant automobile parts during testing. The trial court granted the manufacturer's motion and later granted summary judgment on the basis that the plaintiff no longer had a prima facie case. Upon review, the appellate court established the rule that where important evidence is not available because of an expert's actions a trial judge "should preclude the expert from testifying as to his or her observations of such items before he or she altered them and as to any opinion based thereon." 539 N.E.2d at 1021. The reason for the rule was "the unfair prejudice that may result from allowing an expert deliberately or negligently to put himself … in the position of being the only expert with first-hand knowledge of the physical evidence on which expert opinions as to defects and causation may be grounded." *Id.* The Massachusetts court held that "[a]s a matter of sound policy, an expert should not be permitted to intentionally or negligently destroy or dispose of such evidence, and then to substitute his or her description of it." *Id.* The court then remanded the case to the trial court with instructions that the trial judge make preliminary findings "in order to determine whether [ ] testimony [of the plaintiff's expert] should be admitted in full or limited, and, if it should be limited, the extent of the limitation." *Id.* at 1022. The court warned that the trial court "should go no further than to preclude tainted testimony." *Id.*

In the present case, the trial court's ruling on Columbian's motion *in limine* was an indication to Todd that the court would not allow McCann to testify about any tests done on the original rope which Columbian had not been able to duplicate. The ruling was an indication that Todd's manufacturing defect case would be severely hampered, if not rendered impossible, at trial. Thus, Todd was left with presenting either a product warning or design defect case.[1]

At trial, with the exception of identifying the type of rope manufactured by Columbian and used by Todd at the time of the accident, McCann limited his testimony to a discussion of whether Columbian's warnings about the strength of manila rope were sufficient to inform a tree climber or his employer of the rope's limitations. In testifying on this issue, McCann referred to calculations based upon the capabilities of a new rope. He testified that the manila rope sold by Columbian as "tree" rope did not meet the demands put on it by tree climbers. McCann did not refer to any of the tests made on the original rope, nor did he testify about any manufacturing defect. His testimony was based on the assumption that there was no manufacturing defect in the original rope. Indeed, at the close of trial the jury was instructed that "[t]he unexplained failure of a party to produce evidence peculiarly within that party's control gives rise to the inference that had the evidence been produced, it would have been unfavorable to that party." (R. 162).

We hold that the trial court did not err in allowing McCann to testify about the insufficiency of Columbian's warnings. McCann did not testify to anything that could not have been testified to by any similarly qualified expert. His calculations were based on his knowledge of engineering and figures provided in Columbian's own publications. His calculations were not based, even in part, on any testing done on the rope used by Todd. Given the subject matter of McCann's testimony, it was impossible for any "mental impressions" gained through the viewing of the original rope to have prejudiced Columbian.

Columbian further contends that it was prejudiced because the trial court's ruling subjected it to the uncertain results of a battle of the experts. Columbian bases its contention on *Headley v. Chrysler Motor Corp.* (D.Mass.1991), 141 F.R.D. 362. In *Headley,* the federal district court held that the exclusion of any and all expert evidence was proper where the plaintiff destroyed the subject automobile in a product defect case. The plaintiff argued that both parties were disadvantaged by the destruction of the automobile and would have to rely on the very same evidence. Thus, the plaintiff reasoned that the parties were on equal footing.

In support of its contention, Columbian quotes the following from *Headley:*

First and foremost, plaintiffs' "two tie, all tie" analysis is simply incorrect. The fact that plaintiffs may have been prejudiced by their spoliation does not mean that defendant was and is not prejudiced—that these equal "prejudices," in some manner cancel each other out.

Secondly, and equally as important, defendant is prejudiced in the real sense. Plaintiffs—albeit now handicapped to some extent in their efforts by their own doings—will nevertheless attempt to convince a jury of their peers, by the use of an expert, that plaintiffs' injuries were caused by a defective seat belt. As any practicing lawyer worth his or her salt well knows, the proverbial battle of the experts produces uncertain results. If, in truth and fact, examination of the seat belt revealed no defect whatsoever, then plaintiffs simply would not have any case on this score. But because the plaintiffs have converted what otherwise might have been a "no win" proposition into the proverbial horse race—the winner being judged on the jury's judgment—imperfect as that may be—as to who scored best as an expert, and not on the actual condition of the seat

---

1. Columbian contends it was prejudiced by the change of focus from a manufacturing defect case to a product warnings case on the "eve of trial." The issue of warnings was discussed in depositions taken approximately a year before trial. Furthermore, in the hearing on the motion *in limine,* a motion itself filed on the "eve of trial," trial counsel acknowledged the possibility that the focus of the case would shift to inadequacy of warnings.

belt alleged to have been negligently manufactured.

141 F.R.D. at 366.

We note Columbian's failure to quote a related statement made by the *Headley* court on the same page as the paragraphs quoted above. In that statement, the federal court reasoned that no prejudice would exist in a design defect case because the design itself, and not the alleged defect in the original product, would be the focus of the case. *Id.* at 366, n. 18. In the present case the focus was not on defects in the original rope but on the inadequacy of the warnings to alert Todd of the manila rope's limitations for tree-climbing.

## II. ADMISSION OF ROPE SAMPLES

■ At trial, Todd offered two rope samples into evidence. The trial court admitted the two samples over Columbian's objection.

Columbian contends there was no foundation laid for the admission of the rope samples as McCann's testimony did not establish that the ropes were in the same condition at trial as they were when received by Keeler–Webb. Columbian further contends that it was prejudiced by admission of the rope exhibits because the jury could only conclude that the frayed rope making up the exhibits was defective and, by improper inference, that Columbian's rope was defective.

■ The admissibility of evidence is within the sound discretion of the trial court. *Eversole v. Conrail* (1990), Ind.App., 551 N.E.2d 846, 854, *reh'g denied, trans. denied.* Reversal of the trial court's ruling is warranted only when the court has abused its discretion and its action is clearly erroneous and against the facts and circumstances before it. *Id.* An error in the admission of the evidence is not reversible unless it prejudices

the complaining party's rights. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749, 754.

■ As a general rule, evidence that establishes a reasonable probability that an item is what it is claimed to be and that its condition is substantially unchanged as to any material feature renders the item admissible. *Johnston v. State* (1989), Ind., 541 N.E.2d 514, 516, *reh'g denied;* Robert L. Miller, Jr., 13 *Indiana Practice: Indiana Evidence* § 901.101 at 372 (1994 Supp.). Once this reasonable probability is shown, any inconclusiveness of the connection with the events at issue affects only the exhibit's individual weight. *Carman v. State* (1979), 272 Ind. 76, 396 N.E.2d 344, 346; 13 *Indiana Practice,* § 901.101 at 267 (1984).

In the present case, McCann admitted that the rope samples offered were not in the same condition as they were in when received by Keeler–Webb. However, McCann did testify that the rope samples had to be pieces of either the original rope or the exemplar as those were the only manila rope ever present at Keeler–Webb.

The purpose of offering the ropes was not to establish that there was a manufacturing defect in the rope used at the time of the accident, but to show that the rope was manufactured by Columbian. The changes made in the ropes were not material to the purpose for which the ropes were admitted. Accordingly, on the question of lack of foundation, we cannot say that the trial court abused its discretion in allowing the ropes into evidence.

■ At the time the ropes were admitted into evidence, the trial court gave a limiting instruction to the jury that the ropes were only to be considered for identification purposes.[2] The trial court gave a similar instruction at the end of trial.[3] The instruc-

---

2. The trial court stated that:
   At this time, the Court will overrule the objection, show the rope admitted for the following limited purpose and that purpose is identification of this rope as a possible rope being manufactured by the Columbian Rope Company, that the jury is to disregard the condition of the rope as it appears except as a possible identifier. What I mean by the condition of the rope, I mean the ends of the rope or any other defects that you may perceive in the

rope if you get a chance to handle that rope at some point and time. The Court will admit the rope for the purposes of identification only. (R. 661–662).

3. The instruction reads:
   During the course of the trial, the court admitted into evidence two pieces of rope identified by Mr. McCann. That evidence was admitted only for the specific, limited purpose concerning the identity of rope Mr. McCann

tions clearly informed the jury of the specific purpose for the admission of the rope and admonished it not to consider the appearance as evidence of a defect. When limiting instructions are given that certain evidence be considered for only a particular purpose, the law will presume that the jury will follow the court's admonitions. *Holliday v. State* (1992), Ind.App., 601 N.E.2d 385, 388.

## III. SUFFICIENCY OF THE EVIDENCE

■ Columbian contends the trial court erred in overruling its T.R. 50 motion for judgment on the evidence filed after the completion of Todd's case-in-chief. Columbian argues that Todd failed to establish that the rope used at the time of the accident was manufactured by Columbian.

On appeal, "we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence." *Wal–Mart Stores, Inc. v. Blaylock* (1992), Ind.App., 591 N.E.2d 624, 625–626. In the same manner as the trial court, we must view the evidence in a light most favorable to the non-moving party. Judgment on the evidence may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Id.* at 626.

McCann testified that at least one of the two segments of rope allowed into evidence was part of the rope used by Todd at the time of the accident. Both segments were identified by McCann as the type of rope received by Keeler–Webb from an investigator, James Low, who had received the rope from Todd. Low testified that the rope was identical to other Columbian rope he had examined. Shawn Townsend, the purchasing agent for Townsend Tree Service during the relevant time period, described the rope as being similar to ½ inch manila rope his company had used for many years, all of which was purchased from Columbian. Todd testified that the rope had the same green tracer as the exemplar rope stipulated to have been

manufactured by Columbian. He also testified that the original rope came from a box labelled by Columbian as containing its product.

This evidence was sufficient to establish that the rope used by Todd at the time of the accident was manufactured by Columbian. Accordingly, the trial court did not err in denying Columbian's motion pertaining to this issue.

Columbian also contends its motion should have been granted because Todd failed to establish that there was a defect in the rope. It argues that Todd's evidence was sufficient only to show that an accident had happened, not to prove that the rope being used at the time of the accident was defective. Appellant's Brief at 49.

In connection with its sales efforts, Columbian produced and distributed a series of pamphlets describing its products, including ½ inch manila "tree" rope. The average breaking strength of ½ inch manila "tree" rope was specified in Columbian's publications as being approximately 2,385 pounds.

McCann testified that the breaking strength of the rope was substantially diminished by the presence of knots in the rope. He also testified that the diminished strength resulted in a rope that would break if used by a tree-worker. He further testified that Columbian was aware that tree-workers commonly knot their ropes and that Columbian chose to communicate the effect of knots in obscure charts. He observed that Columbian's warnings that dynamic loading could place "two, three or even more times the normal load involved [on the rope]" seriously underestimated the effect upon the rope that rappelling presented. The net effect is that the warnings issued by Columbian did not "even begin to impress upon the reader a sense of the possible harm that could occur with the ordinary usage of Columbian's manila rope." Appellee's Brief at 16.

■ In a product warnings case, the manufacturer of a product may be held liable if

claims he had in his possession. That evidence was not admitted for any other purpose and is not evidence of how the rope is alleged to have appeared on May 19, 1985. In your delibera-

tions, you must consider this evidence only for the purpose the court has instructed you is permissible.
(R. 163).

the manufacturer (1) knew or had reason to know that the product was likely to be dangerous when used in the manner employed by the plaintiff; (2) had no reason to believe that the plaintiff would have realized the dangerous condition; and (3) failed to exercise reasonable care to inform the plaintiff of such dangerous condition. *American Optical Co. v. Weidenhamer* (1983), Ind., 457 N.E.2d 181, 186. In the present case, there was evidence presented by Todd from which a jury could find that Columbian (1) knew of the demands of tree climbing and the effects of knots upon the ½ inch manila rope's ability to withstand dynamic loading; (2) had no reason to believe Todd and his employer would be aware of the rope's limitations without the benefit of clear warnings of the limitations of rope marketed as "tree" rope; and (3) failed to exercise reasonable care by placing essential data in obscure charts. Thus, the trial court correctly denied Columbian's T.R. 50 motion on this issue.

### CONCLUSION

We hold that the evidentiary rulings challenged by Columbian were correct. We further hold that Todd presented sufficient evidence to support the verdict.

Affirmed.

CHEZEM, and BAKER, JJ., concur.