Paul A. **GRECO** and Janice L. Greco, Plaintiffs,

v.

**FORD MOTOR COMPANY, Defendant.**

No. NA 94–165–C R/H.

United States District Court, S.D. Indiana, New Albany Division.

Sept. 5, 1996.

David V. Scott, New Albany, IN, Henry J. Price, Price & Barker, Indianapolis, IN, Robert L. Houston, Houston & Thompson, Scottsburg, IN, for plaintiffs.

R. Garth Ferrell, Parcel Mauro Hulton & Spaanstra P.C., Denver, CO, Byron K. Mason, Baker & Daniels, Indianapolis, IN, Albert J. Dahm, Baker & Daniels, Fort Wayne, IN, for defendant.

## ORDER DENYING SUMMARY JUDGMENT

BROOKS, District Judge.

This matter comes before the Court on numerous motions for summary judgment filed by Defendant Ford Motor Company ("Ford").

Defendant Ford Motor Company's Motion For Summary Judgment and Defendant Ford Motor Company's Memorandum Of Law In Support Of Its Motion For Summary Judgment were filed June 3, 1996. Plaintiffs' Response To Defendant's Motion For Summary Judgment was filed July 10, 1996, and Defendant Ford's Reply In Support Of Its Motion For Summary Judgment was filed July 22, 1996.

Also before the Court is Defendant Ford's Motion For Partial Summary Judgment and Memorandum Of Ford Motor Company In Support Of Its Motion For Partial Summary Judgment On Plaintiff's [sic] Request For Punitive Damages filed July 10, 1996. Plaintiffs' Brief In Opposition To Defendant's Motion For Partial Summary Judgment On Plaintiffs' Request For Punitive Damages was filed August 9, 1996.

Also before the Court is Defendant Ford's Motion For Partial Summary Judgment and Memorandum Of Ford Motor Company In Support Of Its Motion For Partial Summary Judgment On Plaintiffs' Claim For Punitive Damages Or, In The Alternative, For An Order Continuing This Action filed July 10, 1996. Plaintiffs' Brief In Opposition To Ford's Motion For Partial Summary Judgment On Claim For Punitive Damages Or, In The Alternative, For An Order Continuing This Action was filed August 9, 1996.

Each motion will be addressed in turn.

### Statement Of Relevant Facts

On or about August 8, 1992, the Plaintiffs in this action were travelling northbound on Interstate highway 75 near mile marker 315.3 in Gordon County, Georgia. (Amended Complaint, paragraph 2, hereinafter "Am. Compl., ¶ __".) The Plaintiffs were riding in their 1989 Ford Bronco II, vehicle identification number 11M1J11416KU127576 (hereinafter "the vehicle"), driven by their daughter Theresa Greco. (Am.Compl., ¶¶ 2–3.) When another vehicle appeared to enter her lane of travel, Theresa was required to make an evasive maneuver to avoid a collision. (Am. Compl., ¶ 3; Deposition of Theresa Greco at 57–60, hereinafter "T. Greco Dep. at __".) After the initial avoidance maneuver Theresa lost control of the vehicle the vehicle rolled and Plaintiff Janice L. Greco was ejected from the confines of vehicle. (Am.Compl., ¶ 4; T. Greco at 81–85, 91–93.) Both Plaintiffs in this cause sustained injuries as a result of the accident. (Am.Compl., ¶ 4; T. Greco Dep. at 92–93, 96.)

After the accident, the Plaintiffs began the process of returning life to normal. The vehicle was towed to A–1 Wrecker Service in Dalton, Georgia, and within a few days Lloyd Watterson, Plaintiffs' close friend, inspected and photographed the vehicle on the A–1 lot. (Plaintiffs' Original And Supplementary Answers To Interrogatories Propounded By Defendant, Ford Motor Company, No. 20; Deposition of Lloyd Watterson, pp. 14–17, 54, hereinafter "Watterson Dep. at __".) Watterson's purpose, in addition to retrieving personal items for the Plaintiffs, was to photograph and document the damage to the vehicle. (See Id.; Watterson Dep. at 58–59, 73, 76.) Thereafter, while he was still in Georgia and his wife still in the hospital recovering from accident-related injuries, Plaintiff Paul Greco was informed by his insurance company that the vehicle was a total loss. (Affidavit of Paul Greco, paragraph 8, hereinafter "P. Greco Aff., ¶ __".) Mr. Greco states that his primary concern during this time period was the well-being of his wife, thus when approached by his insurance company he "surrendered possession and control of the subject vehicle within thirty days of the occurrence." (P. Greco Aff., ¶ 8.) Mr. Greco further states that it was not until December of 1992 that he first considered the possibility of seeking any form of recovery from Ford Motor Company.

(P. Greco Aff., ¶ 9.) Once the suit against Ford was contemplated, Mr. Greco and his representatives attempted to re-obtain possession of the vehicle—all efforts were unsuccessful. (P. Greco Aff., ¶ 10.)

Plaintiffs initially filed this products liability action against the Defendant manufacturer Ford Motor Company in Scott County Circuit Court on August 5, 1994. Defendant Ford removed the action to this Court on December 6, 1994. Plaintiffs subsequently amended their complaint on March 25, 1996.

In anticipation of the action against Ford, Plaintiffs retained the services of a professional engineer, Melvin K. Richardson, to provide expert mechanical advice and testimony concerning their accident. Mr. Richardson (1) examined the vehicle in Indianapolis, Indiana on May 1, 1995, (2) examined the photographs of the vehicle taken shortly after the accident, and (3) inspected and measured the accident scene on May 4, 1996. (Affidavit of Melvin K. Richardson, paragraph 2, hereinafter "Richardson Aff., ¶ __".) Mr. Richardson concludes, among other things, that the vehicle's roll angle was "such that the right front rim was contacting the surface of the road, consistent with behavior of a vehicle lacking adequate lateral stability." (Exhibit E to Defendant Ford Motor Company's Memorandum Of Law In Support Of Its Motion For Summary Judgment, "Analysis Report of Melvin K. Richardson" at 3, hereinafter "Richardson Report at __".) Defendant Ford retained the engineering services of John Habberstad to assist in their defense. Mr. Habberstad inspected the vehicle on June 14, 1995, and found the vehicle had been "heavily salvaged." (Affidavit of John Habberstad, paragraph 6, hereinafter "Habberstad Aff., ¶ __".) In particular, Mr. Habberstad found the following components "completely missing and unavailable for inspection: entire front fender; hood; left and right front doors; all wheels, tires and hubs; front brake assemblies; steering system; engine; transmission and transfer case." (Habberstad Aff., ¶ 6.) Moreover, Mr. Habberstad emphasized that "[t]he roof of the vehicle, windshield header and headliner ... were not in the same condition as they were immediately following the accident." (Hab-

berstad Aff., ¶ 7.) Mr. Habberstad, and consequently Defendant Ford, therefore maintains that this change in conditions results in a deprivation of potentially valuable information which, in turn, severely compromises Defendant Ford's ability to defend itself. (Habberstad Aff., ¶¶ 7–8.) Mr. Richardson, however, notes that when he examined the vehicle it was in the same condition as that described in the Habberstad affidavit. (Richardson Aff., ¶ 5.)

Ford now moves this Court to summarily dismiss the Plaintiffs' case claiming that without the missing vehicular components: (1) Plaintiffs cannot establish the elements of their products liability claim; (2) Ford is irreversibly prejudiced in its ability to show that Plaintiffs' rollover was caused by factors other than design defects in the vehicle; (3) Plaintiffs cannot show that those alleged design defects, rather than some other factor, caused their rollover; and (4) public policy requires dismissal of Plaintiffs' products liability claims, or in the alternative, the exclusion of expert testimony about the alleged defects in the vehicle. (Defendant Ford's Reply In Support Of Its Motion For Summary Judgment at 1–2.)

### Discussion

This Court has jurisdiction to rule on this matter pursuant to 28 U.S.C. § 1332, diversity jurisdiction, as the parties are citizens of differing states, and the amount in controversy exceeds $50,000 exclusive of interest and costs. Plaintiffs are individuals residing in the State of Indiana, and Defendant is a corporation incorporated under the laws of a state other than Indiana with its principal place of business in Michigan. Plaintiffs seek compensatory and punitive damages and all taxable court costs.

This Court grants summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996).

### A. Summary Judgment As Sanction For Destruction Or Loss Of Evidence

In arguing for summary judgment, Ford makes three basic arguments: (1) Plaintiffs'

"destruction of evidence" unfairly prejudices Ford's ability to defend this action; (2) Plaintiffs' "destruction of critical evidence" precludes them from establishing a *prima facie* products liability claim against Ford; and (3) Plaintiffs' violation of their duty to preserve the subject vehicle warrants dismissal. In the alternative, Ford asks that this Court to exclude the expert testimony of the vehicle's design or its role in the accident. The first and third arguments are inherently related, thus analysis will be coupled accordingly. Otherwise each argument will be addressed in turn.

### 1. Prejudice To Ford

■■■■■ Ford claims the loss or destruction of various missing components of the vehicle deprive Ford of an adequate defense and therefore warrants dismissal. Ford cites a long list of authority for the proposition that the product is central to the action and without the entire car Ford might be deprived of an "irreplaceable part" of its defense. *See, e.g., Pries v. Honda Motor Co., Ltd.,* 31 F.3d 543, 544 (7th Cir.1994) ("The car itself may be the best witness about the conditions at the time of the accident. Strong forces leave telltale signs in physical objects, signs that can be read by people who know what to look for and have the right instruments."). Ford ignores, however, that allegations of a product or manufacturing defect differ from those alleging design defects. *See Allstate Ins. Co. v. Sunbeam,* 53 F.3d 804, 806–07 (7th Cir. 1995) (allegations of a defective gas grill). An Indiana Appellate panel noted this distinction in *Columbian Rope Co. v. Todd,* 631 N.E.2d 941 (Ind.App.1994). In *Columbian Rope* plaintiff's counsel "lost" the original one hundred forty foot section of rope related to a defective product action turned inadequate warning action. 631 N.E.2d at 942. Once the original product was lost, the *Columbian Rope* plaintiffs wisely elected to forego a product defect action and in evaluating the merits the two remaining options, design defect and inadequate warning labels, opted for the latter. Nonetheless, the rope manufacturer claimed it was prejudiced into a battle of the uninformed experts by plaintiff's loss of the original product—neither expert was able to testify to anything specific to the product in question. 631 N.E.2d at 944. To

support this contention the defendant cited *Headley v. Chrysler Motor Corp.,* 141 F.R.D. 362 (D.Mass.1991), wherein a federal district court excluded any and all expert evidence in a product defect action where plaintiff destroyed the subject automobile. The *Columbian Rope* court followed the reasoning of the *Headley* court, but ultimately reached a result different than that proposed by the rope manufacturer. The *Headley* court had indeed excluded the expert testimony, but in doing so noted that a design defect action would not warrant such a sanction because the proper focus exists on the design rather than the product itself. 141 F.R.D. at 366, n. 18. The *Columbian Rope* court therefore rejected the defendant's arguments because the focus of the case was "not on the defects in the original rope but on the inadequacy of the warnings to alert [plaintiff] of the [ ] rope's limitations...." 631 N.E.2d at 945; *see also Marrocco v. General Motors Corp.,* 966 F.2d 220, 225 (7th Cir.1992) ("The plaintiffs had originally sought recovery under the theory of design defect, and thus, the [product] did not necessarily have to be produced."). That is to say, a design defect, if it exists, is a constant that is unaffected by the accident equation.

■■■■■ The situation at bar is analogous to the *Columbian Rope* holding, but because this area is not well-developed in Indiana it is worth the time to distinguish Ford's cases:

● In *Triton Energy Corp. v. Square D Co.* the Ninth Circuit indeed upheld summary judgment favoring an electronics manufacturer where an unproduced circuit breaker was alleged to have caused a fire, but the case was dismissed for plaintiff's failure to do more than speculate on the cause of the fire rather than a spoliation issue. 68 F.3d 1216 (9th Cir.1995).

● The district court in *Sipe v. Ford Motor Company* granted summary judgment where a product had been repaired prior to inspection by defense experts, but that was a manufacturing defect case. 837 F.Supp. 660, 661 (M.D.Pa.1993).

● The eloquent prose of Judge Easterbrook in *Pries v. Honda Motor Co., Ltd.* quoted above does not mention that sum-

mary judgment for the manufacturer was reversed by the Seventh Circuit because there was a genuine issue of whether the plaintiff was wearing her seat belt during her wreck. 31 F.3d [543] at 544–45 [ (7th Cir.1994) ].

● *Dillon v. Nissan Motor Co., Ltd.* presented a defective design claim, but in that case the entire vehicle was completely destroyed due to plaintiff's negligence subsequent to a full inspection by plaintiff's expert yet prior to any examination by the defense expert. 986 F.2d 263 (8th Cir. 1993).

● In *Thomas v. Bombardier–Rotax Motorenfabrik, GmbH*, the Northern District of Illinois, applying Illinois law, excluded testimony concerning an airplane wreckage because the unavailability rendered a defense expert unable to conclude his analysis. 909 F.Supp. 585, 588 (N.D.Ill.1996).

Lastly, a Grant County Indiana case proffered by Ford needs special discussion. In *Miller v. Commodore Home Systems, Inc.,* 27C01–9103–CP–161, the Grant Circuit Court dismissed a manufacturing defect claim where evidence was destroyed by plaintiffs' insurance carrier prior to and just after the suit was filed. Trial court decisions are regularly the most insightful of the available tribunals, but this Court simply may not rely on an Indiana trial court decision while sitting in diversity. In diversity cases, this Court applies the state law that would be applied in this context by the Indiana Supreme Court. *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971); *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Clarin Corp. v. Massachusetts General Life Ins. Co.,* 44 F.3d 471, 474 (7th Cir.1994); *Fidelity and Guar. Ins. v. Everett I. Brown Co.,* 25 F.3d 484, 486 (7th Cir.1994). Where the state supreme court has not ruled on an issue, decisions of intermediate state courts control unless there are persuasive indications that the highest state court would decide the issue differently. *L.S. Heath & Son v. AT & T Information Sys.,* 9 F.3d 561, 574 (7th Cir. 1993) (citing *Hicks v. Feiock,* 485 U.S. 624, 630 n. 3, 108 S.Ct. 1423, 1428, n. 3, 99 L.Ed.2d 721 (1988)); *cf. D'Acquisto v. Wash-*

*ington,* 640 F.Supp. 594, 619 (N.D.Ill.1986) (Federal Court in diversity "is bound only by the decisions of the state Supreme Court and by the direction that court would take, not by the state appellate courts"). This logic does not permit a leap to include Indiana trial court decisions where there exists no direct authority by either the Indiana Supreme Court or the Indiana Court of Appeals. *Miller v. Commodore Home Systems* will therefore play no part in this decision.

The central issue is Ford's prejudice. John Habberstad claims the missing components deprive him "of potentially valuable information about the accident that cannot be obtained from other sources." (Habberstad Aff., ¶ 7.) Mr. Habberstad proposes, for instance, that "[m]arks on the vehicle's wheels and tires can provide critical, physical evidence about the causes of a rollover which cannot be obtained from other sources." (Habberstad Aff., ¶ 4.) This evidence is gone, there is no dispute, and the result may indeed work a prejudice on Ford—possibly enough to warrant a sanction. Dismissal, however, is not that sanction.

"A dismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations, where there is a clear record of delay or contumacious conduct, or when less drastic sanctions have proven unavailable." *Marrocco,* 966 F.2d at 224. In this case, although the Court is in no position to doubt the expert testimony of Mr. Habberstad, the Court is capable of recognizing a factual conflict between the parties' experts. Mr. Habberstad's focus, at this juncture, seems limited to the vehicle's contact points prior to the roll, *i.e.,* the tires and rims; whereas Mr. Richardson, for whom rim analysis was never an option, analyzed the angle of the vehicle relative to its forward velocity and intended lane of travel as apparently gleaned from the available wreckage and/or the accident scene. (Richardson Report, 3–4.) This Court, therefore, is unable to conclude the extent of the prejudice to Ford sufficient to warrant the draconian remedy of dismissal.

Moreover, this case does not present intentional or even grossly negligent conduct re-

sulting in the destruction of critical evidence. Immediately after the incident Mr. Greco was the primary decision maker concerning the health of his wife and the custody of a crumpled mass of sheet metal and rubber. It is reasonably understandable that the latter was given the lesser attention. Nor does this case present a situation where Plaintiffs' expert has the benefit of insight now unavailable to Ford's experts. From the outside it appears the parties are on equal footing.

Dismissal therefore is rejected at this point.

### 2. Plaintiffs' *Prima Facie* Case

Ford next maintains summary judgment is appropriate because due to the absence of evidence plaintiffs cannot establish the requisite elements of their products liability claim. Ford claims Plaintiffs cannot prove that the vehicle "was configured the way that Ford designed it at the time plaintiffs crashed (the defective condition element), or that the Bronco II's design—rather than some other factor—proximately caused plaintiffs' injuries in *this* action (the causation element)." (Defendant Ford's Reply In Support Of Its Motion For Summary Judgment at 2.) Ford seems to argue that to survive summary judgment Plaintiffs must disprove all other causation theories prior to trial.

In Indiana a successful products liability plaintiff must show: (1) the seller, (2) put into the stream of commerce, (3) a product in a defective condition unreasonably dangerous, and (4) that was the proximate cause of plaintiff's injuries. *Underly v. Advance Mach. Co.*, 605 N.E.2d 1186, 1189 (Ind. App.1993); *Senco Prod., Inc. v. Riley*, 434 N.E.2d 561, 567 (Ind.App.1982); *see also Miller v. Todd*, 551 N.E.2d 1139 (Ind.1990). Plaintiffs here have set forth that (1) & (2) the vehicle, their 1989 Ford Bronco II, was manufactured and distributed by Defendant Ford, (3) was purportedly susceptible to rollovers at an unusually low rate of speed, and (4) Mr. Richardson notes that their vehicle's "roll angle of the vehicle was such that the right front rim was contacting the surface of the road, consistent with behavior of a vehicle lacking adequate lateral stability," *i.e.*, the susceptibility to roll-over was the proxi-

mate cause of the damages at issue. (Richardson Report at 3.) This is a *prima facie* products liability case. Whether Mr. Richardson's conclusion is accurate is a question for the jury, therefore, summary judgment is inappropriate.

### 3. Alternative Argument To Preclude Evidence

In its final argument Ford argues, alternatively, that due to the loss or destruction of evidence the Court should "at a minimum, exclude plaintiffs from presenting any expert testimony regarding the role of the Bronco II's design, or any of its components, in causing plaintiffs' accident." (Defendant Ford Motor Company's Memorandum Of Law In Support Of Its Motion For Summary Judgment at 12.) While it is perfectly understandable why Ford would make such a request, it is not so understandable is how this argument differs, even slightly, from the straight dismissal remedy. Without evidence of the design in the accident there is no *prima facie* case which, of course, translates into an immediate dismissal. This therefore presents the same draconian remedy addressed, and rejected, above.

Summary judgment will therefore be denied.

### B. Duplicative Punitives

Plaintiffs in this action allege that Ford was "aware of the instability of the Bronco II" and that Ford "made a conscious decision to manufacture and sell the Bronco II and not to correct the design flaws recognized by its own engineers." (Am.Compl. at Count III, ¶¶ 2–3.) Plaintiffs further allege that Ford's actions "constitute gross negligence and/or wanton misconduct, which entitles the plaintiffs to recover punitive damages." (Am.Compl., ¶ 6.) Ford has filed a motion for partial summary judgment claiming that "[a] punitive damages award in this case would be duplicative of prior punitive sanctions assessed by the courts of the State of Indiana, and would therefore violate the Due Process Clause of the Fourteenth Amendment and Article I of the Indiana Constitution." (Memorandum Of Ford Motor Com-

pany In Support Of Its Motion For Partial Summary Judgment at 1.)

The case at bar is not Ford's first defense of its Bronco II design. Most relevant to the present inquiry is a jury decision and subsequent modification from the Marion County, Indiana Superior Court. In *Ammerman v. Ford Motor Company*, 49D05–9311–CT–1305 (Marion Sup.Ct.1996), a similar Bronco II rollover yielded a jury verdict of $58 million in punitive damages against Ford. Ford filed a motion to correct error, and the award was subsequently reduced to $13.8 million. Plaintiffs' current bid for punitive damages openly tracks the *Ammerman* holding: in moving to amend their complaint Plaintiffs noted a desire to include issues "identical to those addressed in *Ammerman.*" (Plaintiffs' Motion For Leave To Amend Complaint at 2.) This is exactly what Ford claims should not be allowed. Ford claims the *Ammerman* holding represents sufficient punishment and deterrence for the Bronco II's shortcomings and further punitives in Indiana would work contrary to due process.

■■■■■ Punitive damages, of course, are not designed or intended to compensate or enrich individual victims, but are intended exclusively "to punish[ ] unlawful conduct and deter[ ] its repetition." *BMW Of North America, Inc. v. Gore*, —— U.S. ——, ——, 116 S.Ct. 1589, 1595, 134 L.Ed.2d 809 (1996); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21, 111 S.Ct. 1032, 1045, 113 L.Ed.2d 1 (1990). Ford, therefore, maintains the *Ammerman* decision constituted sufficient punishment and deterrence concerning the Bronco II. *See, e.g., Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 280–81 (2d Cir. 1990) (single punitive award held sufficient for due process purposes). Although the argument is facially intriguing, the Court must reject Ford's position.

An important component of punitive damages is the intended deterrent effect. Ford no longer manufactures the Bronco II, but Ford and other automobile producers continue to manufacture sport/utility and other vehicles. This Court cannot declare at this point that because Ford was once "punished" for its now defunct Bronco II line further deterrence is uncalled for. Whether Ford needs be dissuaded from defective engineering in this case or otherwise additionally punished is first a question for the jury. *See McLaughlin v. State Farm Mutual Auto. Ins. Co.*, 30 F.3d 861, 868 (7th Cir.1994), *cert. den'd*, —— U.S. ——, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995); *KNS Companies, Inc. v. Federal Ins. Co.*, 866 F.Supp. 1121, 1124 (N.D.Ill.1994). The jury will be given that opportunity. The reasonableness of the jury's verdict, once delivered, can be addressed in a different light if necessary. Summary judgment will therefore be denied.

## C. Wilful Or Wanton Conduct

■■■■■ Ford next argues Plaintiffs should not be allowed to pursue punitive damages because Plaintiffs cannot meet their burden of showing that Ford acted willfully or wantonly with conscious disregard for probable injury.

In Indiana

Punitive damages may be awarded only if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mutual mistake of fact or law, honest error or judgment, overzealousness, mere negligence or other human feeling, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from like conduct in the future."

*Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind.1993), *quoting Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 137–38 (Ind.1988). Plaintiffs' claims for punitive damages are supported by evidence of gross negligence and/or wanton misconduct in developing and selling the Bronco II while Ford's defense efforts provide evidence similar in volume and quality that directly contradicts Plaintiffs' evidence. This question, therefore, is not for the Court to decide summarily. Evidence must be produced at trial and, if need be, the Court will revisit these issues as a Rule 50(a) and/or 50(b) motion. Summary judgment will be denied.

## D. Conclusion

The Court, in light of the foregoing as well as the relevant and applicable case and statu-

tory law, hereby **DENIES Defendant Ford Motor Company's Motion For Summary,** **DENIES** Defendant Ford's **Motion For Partial Summary Judgment** on the issue of duplicative punitives, and further **DENIES** Defendant Ford's **Motion For Partial Summary Judgment** on the issue of insufficient evidence for punitive damages.

**ALL OF WHICH IS ORDERED.**