**Richard MULLIS, Individually and d/b/a Mullis Building Corporation, Appellant–Plaintiff,**

v.

**Shawn A. BRENNAN, Karen S. Brennan, and Lincoln Service Mortgage, now Great Financial Bank, Appellees–Defendants.**

No. 32A01–9808–CV–315.

Court of Appeals of Indiana.

Sept. 10, 1999.

Bryan Lee Ciyou, Cannon & Ciyou, P.C., Indianapolis, Indiana, Attorney for Appellant.

Edward R. Hannon, Donna A. Heiser, Harrison & Moberly, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

RATLIFF, Senior Judge

### STATEMENT OF THE CASE

Plaintiff–Appellant Richard Mullis ("Mullis"), Individually and d/b/a Mullis Building Corporation ("MBC") appeals the trial court's judgment in favor of Defendants–Appellees Shawn A. Brennan and Karen S. Brennan ("the Brennans").[1]

We affirm.

### ISSUES

Mullis raises six issues for our review, which we consolidate and restate as:

I. Whether the trial court erred in concluding that Mullis was individually liable for damages suffered by the Brennans.

II. Whether the trial court erred in dismissing the mechanic's lien on the basis that it was filed by the wrong party.

III. Whether the trial court erred in finding that Mullis breached the contract with the Brennans by not performing in a workmanlike manner.

IV. Whether the trial court erred in finding that Mullis violated the Home Improvement Contracts Act.

V. Whether the trial court erred in admitting a report which was prepared by the Brennans' expert on the night before the first day of trial and given to Mullis on the second day of trial.

The Brennans raise one issue, which we restate as:

VI. Whether the trial court's finding of a deceptive act supports an award of appellate attorney fees.

### FACTS

In April of 1996, the Brennans contacted Mullis to obtain estimates from Mullis on the cost of building an addition onto the Brennans' house. After negotiations, Mullis, individually, tendered a contract to the Brennans. The contract provided that Mullis, individually, would build the 24' by 30' room addition for the Brennans, and that the Brennans would pay Mullis, individually, the total sum of $43,500.00. MBC was not a party to the contract.

Problems between the Brennans and Mullis regarding his workmanship and performance of the contract began to develop immediately after he began the construction. In August or early September of 1996, after several months of observing the poor quality work that was being done on the room addition, the Brennans demanded that Mullis correct the problems before any further payments or "draws" would be made to him. This demand came after the Brennans had paid Mullis $10,-500.00 of the contract price and after they had asked, on numerous occasions, that Mullis correct the serious problems with the project. Mullis refused to do any further work until he was paid his "draws" under the contract. Mullis never completed the project.

After Mullis left the project, the Brennans, through their own labor and that of various subcontractors hired by them, worked on the room addition to correct the problems left by Mullis and to complete the work contemplated by the contract. The room addition was completed in July, 1998.

Subsequent to Mullis's departure from the project, MBC filed a mechanic's lien in

1. The trial court ruled that prior to the commencement of trial, "the Defendants, Lincoln Service Mortgage and First Indiana Bank, have filed or otherwise indicated their disclaimer as to any interest in the outcome of the litigation and have been released as party defendants." Although listed in the caption, these entities are not parties to this appeal.

the amount of $20,469.00 for "work and/or materials furnished by Claimant and consisting of remodel/addition for improvement of said real estate within the last sixty (60) days." (R. 72). The lien document was signed by Mullis as President of MBC.

Thereafter, Mullis d/b/a MBC, filed a "Complaint for Breach of Contract and to Foreclose Mechanic's Lien." The Brennans filed counterclaims alleging (1) a slander of title claim against both Mullis and MBC; (2) a claim of violation of the Home Improvement Contract Law by Mullis; (3) a claim of violation of the Home Improvement Contract Law by MBC; and (4) a claim of breach of contract and/or breach of implied warranty. After a two day bench trial, the trial court entered judgment for the Brennans on Mullis's complaint and on various counterclaims. The trial court entered a money judgment in favor of the Brennans and against Mullis, individually, in the amount of $10,786.74. The trial court *sua sponte* entered special findings of fact and conclusions of law in support of its judgment. Mullis now appeals.

### DISCUSSION AND DECISION
### STANDARD OF REVIEW

 A review of findings of fact and conclusions of law that are issued *sua sponte* is based upon the same standard as a review of findings and conclusions issued upon a party's written request. We may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998). In addition, before affirming on a legal theory supported by the findings but not espoused by the trial court, we should be confident that its affirmance is consistent with all of the trial court's findings of fact and inferences drawn from the findings. *Id.* In reviewing the judgment, we first must determine whether the evidence supports the findings and second, whether the findings support the judgment. *Ahuja v. Lynco Ltd. Medical Research,* 675 N.E.2d

704, 707 (Ind.Ct.App.1996), *trans. denied.* The judgment will be reversed only when clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.* A judgment is clearly erroneous even though there is evidence to support it if the reviewing court's examination of the record leaves it with the firm conviction that a mistake has been made. *Owensby v. Lepper,* 666 N.E.2d 1251, 1256 (Ind.Ct. App.1996), *reh'g denied.* When findings or conclusions are entered *sua sponte,* however, the specific findings control only as to the issues they cover, while the general judgment standard applies to any issue upon which the court has not found. *Indiana Farmers Mutual Insurance Co. v. Ellison,* 679 N.E.2d 1378, 1380 (Ind.Ct. App.1997), *trans. denied.*

### I. INDIVIDUAL LIABILITY

 Mullis contends that the trial court erred in determining that he was individually liable for any damages suffered by the Brennans. He argues that the Brennans knew he was acting as an agent for MBC when he entered into the home improvement contract with them. In support of his argument, Mullis points to two faxes from the Brennans which were addressed to Mullis and MBC and to letters from Mullis and MBC.

The trial court found that the parties to the home improvement contract at issue were the Brennans and Mullis, as an individual. The trial court also found that the Brennans were directed to pay Mullis, as an individual. The trial court further found that MBC was not a party to the contract. From these facts, the trial court concluded that Mullis was individually liable.

The record discloses that Mullis acknowledged at trial that the contract was not signed by him "for and on behalf of" MBC. The record also discloses that the contract makes no reference to MBC and was signed by Mullis as "Contractor." The record further discloses that payments were made to Mullis, not MBC, and that the payments were deposited into Mullis's personal account, not into MBC's account in a separate bank. This evidence supports the trial court's findings and its ultimate conclusion that Mullis was individually liable for any damages suffered by the Brennans. If Mullis wanted to act as agent for MBC and bind the corporation to the contract, he should have signed the contract in his corporate capacity. This would have had the effect of insulating him from liability. *See Winkler v. V.G. Reed & Sons, Inc.,* 619 N.E.2d 597, 599 (Ind.Ct. App.1993), *aff'd,* 638 N.E.2d 1228 (Ind. 1994) (holding that a corporate officer signing a contract in his corporate capacity is generally not liable for damages under the contract).

■■■ Mullis, without any citation to authority, attempts to show that the trial court erroneously "pierced the corporate veil." A corporation is an independent legal entity, separate and distinct from its shareholders. *McQuade v. Draw Tite, Inc.,* 659 N.E.2d 1016, 1020 (Ind.1995). Mullis fails to recognize that MBC, as an independent legal entity, did not enter into the contract with the Brennans. Because MBC was not a party to the contract, the trial court did not pierce the corporate veil to burden Mullis with individual liability.

## II. VALIDITY OF THE MECHANIC'S LIEN

Mullis contends that the trial court erred in determining that the mechanic's lien filed by MBC against the Brennans was invalid. The trial court found that on October 16, 1996, MBC, not Mullis individually, filed the mechanic's lien. The trial court concluded that the lien was invalid because (1) MBC did not provide any work and/or materials for the project, and (2) Mullis, not MBC, was the party to the contract from which the claim against the Brennans arose.

■■■ As we discussed above, the record discloses that Mullis, not MBC, entered into the contract with the Brennans. Accordingly, the only party who possibly was entitled to the lien was Mullis, not MBC. However, it was MBC which filed the lien. Ind.Code § 32–8–3–3(a) requires that the sworn statement of intention to hold a lien "must specifically set forth: . . . (2) the name and address of the claimant and the name of the owner." Because the mechanic's lien statute is in derogation of the common law, the provision of the statute "relating to the creation, existence or persons entitled to the lien have historically been strictly construed." *Garage Doors of Indianapolis v. Morton,* 682 N.E.2d 1296, 1302 (Ind.Ct.App.1997), *trans. denied.* Here, the designation of the wrong claimant must render the lien invalid.

Mullis also contends that, at the very least, MBC should be entitled as a subcontractor to acquire and foreclose upon a mechanic's lien for the materials that it paid for and provided to the Brennans. We note that at Mullis' request, MBC was dismissed as a party to this action. MBC is also not a party to this appeal. Accordingly, we will not address Mullis's contention.[2]

Mullis further contends that as an individual contractor he should be allowed to collect the total amount claimed in the mechanic's lien. It is clear from our discussion so far that this contention is without merit as Mullis, the individual contractor, did not file the mechanic's lien.

---

**2.** *Mullis's persistence in failing to recognize that he and MBC are two separate entities is illustrated by his designation in the caption as* "Richard Mullis ... doing business as Mullis Building Corporation."

## III. BREACH OF CONTRACT

Mullis contends that the trial court erred in determining that he was liable for damages on the basis that he breached the home improvement contract with the Brennans. He argues, without citation to authority, that the Brennans breached first and that "[a]rguably, this was an anticipatory breach of the contract by the Brennans." Appellant's Brief at 24.

The trial court found that the Brennans presented "overwhelming evidence" to show that Mullis was not performing his contract in a workmanlike manner and that the room addition was not structurally sound and free of substantial defects at the time Mullis walked off the project. The trial court also found that Mullis's poor workmanship and lack of supervision of subcontractors created structural problems for the room addition. The trial court further found that the Brennans continually and clearly expressed their concerns about problems with the foundation, the frame, the roof, and the generally poor workmanship. Finally, the trial court found that:

> In August or September, 1996, after several months of observing the poor quality work that was being done on their room addition, and after paying Mullis $10,500.00 of the contract price, and after asking Mullis numerous times to correct the many serious problems with his workmanship on the project, the Brennans demanded that Mullis correct the problems before any further payments or "draws" would be made to Mullis. Mullis refused to do any further work until he was paid his "draws" under the contract. Mullis walked off the project in September, 1996 and never returned.

(Finding of Fact # 11). The trial court then concluded that Mullis committed the first material breach of the contract by, *inter alia,* failing to perform the terms of the contract in a workmanlike manner, providing substandard and defective work, and walking off the project and failing to correct defective work and complete the work promised.

The law implies a duty in every contract for work or services that the work or services will be performed skillfully, carefully, diligently, and in a workmanlike manner. *Data Processing Services, Inc. v. L.H. Smith Oil Corp.,* 492 N.E.2d 314, 319 (Ind.Ct.App.1986), *reh'g denied.* The term "workmanlike manner" has a fixed meaning in the building trade: "To do the work in the building of a house in a good workmanlike manner is to do the work as a skilled workman would do it." *Morris v. Fox,* 79 Ind.App. 389, 135 N.E. 663, 664 (1922). Failure to perform in a workmanlike manner may constitute a breach of contract. *Wilson v. Palmer,* 452 N.E.2d 426, 429 (Ind.Ct.App.1983).

Here, the record supports the trial court's finding that Mullis failed to perform in a workmanlike manner. The record also supports the trial court's finding that the Brennans requested that the defective work be cured, and that Mullis refused to do so. This evidence is sufficient to support both the trial court's findings and its conclusion that Mullis breached the contract.

A mere request to be released from a contract cannot act as an anticipatory breach. *Jay County Rural Electric Membership Corp. v. Wabash Valley Power Association, Inc.,* 692 N.E.2d 905, 911 (Ind.Ct.App.1998), *trans. denied.* No remedy for anticipatory breach can be afforded unless the repudiation was positive, absolute, and unconditional. *Id.* The Brennans' request was neither absolute nor unconditional; therefore, it did not act as an anticipatory breach.

## IV. THE HOME IMPROVEMENT CONTRACTS ACT

Mullis contends that the trial court erred in determining that he violated the Home Improvement Contracts Act ("the Act") found at Ind.Code § 24–5–11–1 *et seq.* He argues that he substantially com-

plied with the Act and that the Brennans failed to show how any noncompliance caused material prejudice to them.

The trial court found that Mullis did not comply with the following provisions of Ind.Code § 24–5–11–10:

a. The Contract did not contain the address of the home improvement supplier, Mullis, and did not contain each of the telephone numbers and names of any agent to whom consumer problems and inquiries could be directed. Ind.Code § 24–5–11–10(a)(2).

b. The Contract did not contain the date that the home improvement contract was submitted to the Brennans and any time limitation on the Brennans' acceptance of the Contract. Ind.Code § 24–5–11–10(a)(3).

c. The Contract did not contain a reasonably detailed description of the proposed home improvements. Ind. Code § 24–5–11–10(a)(4). . . .

d. The Contract did not contain the approximate starting and completion dates of the home improvements. Ind.Code § 24–5–11–10(a)(6).

e. The Contract did not contain a statement of any contingencies that would materially change the approximate completion date of the contract. Ind.Code § 24–5–11–10(a)(7).

(Finding of Fact # 6). The trial court noted that Ind.Code § 24–5–11–14 provides that a home improvement supplier who violates the Act "commits a deceptive act that is actionable by the attorney general or by a consumer under IC 24–5–0.5–4 and is subject to the remedies and penalties under IC 24–5–0.5." The trial court concluded that by failing to comply with Ind.Code § 24–5–11–10, Mullis committed a deceptive act that is actionable under Ind.Code § 24–5–0.5–4(a) and that the de-

ceptive act was uncured or incurable. The trial court then noted that under Ind.Code § 24–5–0.5–4(a) a person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer and for reasonable attorney fees.

▇▇▇▇ In *F.D. Borkholder Co. v. Sandock,* 274 Ind. 612, 413 N.E.2d 567, 571 (1980), our supreme court recognized that a building contractor occupies a position of trust with those who enter into a home improvement contract with him. The court emphasized that few consumers are knowledgeable about this industry or of the techniques that must be employed to produce a sound structure; therefore, consumers are forced to rely on the expertise of the contractor. *Id.* This reliance on the contractor, coupled with the well-known abuses found in the home improvement industry, no doubt served as an impetus for the passage of the Act. Through the Act, the legislature sought to protect consumers by placing specific minimum requirements on the contents of home improvement contracts. Accordingly, we will hold the contractor to a strict standard.

▇▇▇▇ In the present case, it appears that the trial court concluded that the incidents of non-compliance listed in its findings combined to create a deceptive act.[3] Specifically, the lack of detail in the contract was a factor in Mullis's failure to cure the deficiencies in the room addition. We agree with Mullis that some of the incidents of non-compliance, standing alone, are not sufficient to support a finding of a deceptive act because no prejudice resulted therefrom. However, we find that the combined acts of non-compliance support both the trial court's findings and its conclusion that Mullis committed a deceptive and uncured act.[4]

---

3. Mullis correctly points out that in order to establish an incurable act under Ind.Code § 24–5–0.5, a consumer must show intent to defraud on the part of the supplier of services. *See McKinney v. State,* 693 N.E.2d 65, 68

(Ind.1998). The same showing is not required to establish the existence of an uncured act. *Id.*

4. In his reply brief, Mullis attempts to raise the issue of whether the trial court properly

## V. ADMISSION OF EVIDENCE

Mullis contends that the trial court erred in admitting a document prepared by the Brennans' expert witness. He argues that he was prejudiced by admission of the document because he did not receive it in response to a discovery request, but instead received it on the second day of the two day trial.

The record discloses that on the second day of trial the expert, a retired architect, testified that (1) the drawings provided by Mullis were inadequate; (2) the crawl space construction differed significantly from the plans; (3) the walls were not measured properly; (4) the north face of the block foundation wall was overhanging the footing; and (5) the pier on the west side was not structurally sound. The expert then testified that he created a document by cutting up a copy of the Brennans' punch list and rearranging it to categorize the defects listed thereon. The expert testified that the new document categorized the defects from most serious to minor. The expert also testified that the document contained a "write up" concerning two of the topics he previously had testified about.

The Brennans offered the document, and Mullis objected on the twin bases that the document was not disclosed to him through the discovery process and that he did not receive the document until the second day of trial. Through its questioning of the parties, the trial court ascertained that (1) the expert had not prepared the document until the night before the first day of trial; (2) the Brennans' attorney did not anticipate the creation of the document and did not receive it until the night before trial; (3) the production of the document was delayed until the second day of trial because the Brennans' attorney could not review it until after the first day

of trial; and (4) Mullis's attorney had known for a significant amount of time that the expert was going to testify. The trial court then overruled Mullis's objection and admitted the document.

■ A trial court has broad discretion in determining the propriety of admission of evidence. *Columbian Rope Co. v. Todd*, 631 N.E.2d 941, 945 (Ind.Ct.App. 1994). Reversal of the trial court's ruling is warranted only when the court has abused its discretion, and its action is clearly erroneous and against the facts and circumstances before it. *Id.* Furthermore, we will not reverse the trial court's admission of evidence absent a showing of prejudice. *Id.*

■ Here, it appears that the trial court was satisfied that neither the Brennans' expert nor their attorney delayed creation of the document in an attempt to circumvent discovery. Furthermore, it appears that the trial court was satisfied that Mullis, although not aware that the document existed until the second day of trial, was not "surprised" by the document's content. We hold that the trial court properly exercised its discretion in admitting the document. This is especially true as the document was merely a reordering of the evidence previously admitted and a recapitulation of the expert's testimony.

## VI. APPELLATE ATTORNEY FEES

■ The Brennans correctly note that the trial court awarded attorney fees due to Mullis's violation of Ind.Code § 24–5–0.5–4(a), a provision of the Deceptive Consumer Sales Act providing for an award of "reasonable attorney fees." The Brennans also correctly note that a statutory provision entitling a party to "reasonable attorney fees" includes appellate attorney fees. *See City of Hammond v. Marina Entertainment Complex, Inc.,* 681

computed the attorney fee award attributable to the uncured deceptive act. The Brennans subsequently filed a motion to strike Mullis's argument on the basis that it was not timely raised. It is not proper to raise a new issue

in a reply brief. *See Boucher v. Exide Corporation,* 498 N.E.2d 402, 404 (Ind.Ct.App. 1986), *reh'g denied, trans. denied.* Therefore, the issue is waived.

N.E.2d 1139, 1145 (Ind.Ct.App.1997), *trans. denied.* Accordingly, the Brennans request an award of appellate fees. We remand to the trial court for a determination of appellate attorney fees generated in the Brennans' appellate defense of the award of damages and attorney fees under the Deceptive Consumer Sales Act.

## CONCLUSION

The trial court did not err in determining that Mullis was individually liable for the damages suffered by the Brennans or that the mechanic's lien was invalid. The trial court did not err in determining that Mullis breached the home improvement contract and that he violated the Home Improvement Contracts Act. Furthermore, the trial court did not abuse its discretion in admitting the expert's document.

We affirm the trial court on all issues raised by Mullis. We remand with instructions that the trial court determine the correct amount of appellate attorney fees.

RILEY, J., and MATTINGLY, J., concur.