Paul E. BENGE and Vickie Benge d/b/a Raceway Construction, Appellants–Defendants,

v.

Lonja MILLER, Appellee–Plaintiff.

No. 49A02–0412–CV–1066.

Court of Appeals of Indiana.

Oct. 24, 2006.

Mark Small, Indianapolis, IN, Attorney for Appellant.

Donald F. Foley, Eric C. Bohnet, Indianapolis, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Defendants–Appellants Paul and Jackie Benge, d/b/a Raceway Construction, appeal the trial court's judgment in favor of plaintiff-appellee Lonja Miller on four counts of Miller's seven-count complaint against the Benges as well as on the Benges' counterclaim. We affirm.

The Benges raise six issues, which we consolidate and restate as:

I.   Whether the trial court erred in entering judgment in favor of Miller on the breach of contract and negligence counts;

II.  Whether the trial court erred in entering judgment in favor of Miller on the home improvement contracts act count;

III. Whether the trial court erred in entering judgment in favor of Miller on the home improvement fraud count;

IV.  Whether the trial court erred in granting judgment in favor of Miller on the Benges' counterclaim; and

V.   Whether the trial court erred in ordering the Benges to pay Miller's attorney fees.

In her appellate brief, Miller asks this court to order the Benges to pay her appellate attorney fees.

We affirm the trial court and remand the case to the trial court for a determination of appellate attorney fees generated in

Miller's defense of the award of damages and attorney fees under both the Home Improvement Fraud and the Home Improvement Contracts Acts.

On September 9, 2002, the Benges and Miller entered into a written home improvement contract. Pursuant to the terms of the contract, the Benges agreed to construct a 20–foot by 20–foot sunroom addition to Miller's house as well as a 20–foot by 20–foot concrete patio. The Benges also agreed to install doors and windows in the sunroom and to install a brick exterior that matched as closely as possible the existing brick on Miller's house.

Miller and the Benges subsequently entered into a contract addendum for the construction of an extension to Miller's garage. The Benges agreed to pour a concrete slab in the garage and a new sidewalk at the side of the house that would connect to an existing sidewalk. Miller told the Benges that she wanted the new sidewalk to match the existing sidewalk because the two sidewalks would meet at the corner of the house. Miller also contracted with the Benges to install the wiring for a Jacuzzi that was to be placed on the concrete patio, and to renovate her kitchen, including the installation of a laminate floor in both the kitchen and sunroom. The contract for the kitchen project was not in writing.

The Benges gave Miller copies of the contract and addendum without her signature. Further, neither the contract nor the addendum included approximate start or completion dates, or a statement of contingencies that would materially change the approximate completion date.

Miller, who paid the Benges $64,775.30 for the work, was not satisfied with its quality. In May 2003, Miller sent the Benges a letter seeking correction of the defective work as well as the return of $4,202.33 in overpayments. The Benges apparently failed to correct their work or return the overpayments to Miller, and in May 2004, she filed an amended seven-count complaint against the Benges for 1) breach of contract, 2) negligence, 3) fraud; 4) constructive fraud; 5) violation of the home improvement contracts act; 6) home improvement fraud; and 7) violation of the deceptive consumer practices act. The Benges filed a counterclaim alleging that Miller still owed them $4,300.00.

At trial, Miller testified that before she entered into the contract with the Benges, she told them that she wanted to be sure that the brick on the sunroom matched the existing brick on the house. The Benges told Miller that they could match the brick. Miller also asked the Benges if she should wait until spring when the weather warmed up to have the work done. The Benges told Miller that they could get the work before it got too cold.

However, when the Benges completed the sunroom, the new brick did not match the existing brick. According to Miller, the new brick was a different texture and color from the existing brick, and the mismatch decreased the value of her home. Benge agreed about the decrease in the home's value. Contractor Richard Light testified that he could take corrective action to match the bricks for $3,120.00.

Miller also testified that the concrete on the 20–foot by 20–foot patio and new sidewalk was discolored, spalled and pitted. According to Miller, when she complained about the condition of the sidewalk to the Benges, they said they could laminate it. Miller told the Benges that she did not want the sidewalk laminated because she wanted it to match the existing sidewalk. Nevertheless, without Miller's approval, the Benges painted a gray sealant on the new sidewalk, which resulted in a difference in the two sidewalks.

Contractor Buddy Nenedjian, who was responsible for constructing Miller's 20–foot by 20–foot concrete patio and sidewalk, testified that the discoloration in the concrete was due to the high calcium content that was used in cold weather to help with freezing temperatures. He also testified that he did not cover the concrete with concrete blankets or plastic to protect it from the cold temperature. It was 34 degrees the evening the concrete was poured for Miller's patio and sidewalk.

Nenedjian further testified that he told the Benges that he was willing to tear out and replace the concrete patio and sidewalk. He did not know, however, if the Benges had passed on his offer to Miller. Contractor Scott Rose testified that he could tear out and redo Miller's patio and sidewalk for $9180.00.

Miller also testified that the sunroom was only 19.5 feet by 18.5 feet, and that she was overcharged $3,522.03 for it. She further complained that she had to pay other contractors $76.00 to adjust a door in the sunroom that had been improperly hung and $225 to rewire the Jacuzzi.

Lastly, Miller pointed out that although she initially contracted for a $4500.00 laminate floor for the kitchen and sunroom, she later selected carpet, which cost approximately $3000.00 less than the laminate floor. Although the Benges installed the carpet, they did not credit Miller the $3000.00 difference between the carpet and the laminate floor.

Miller asked the court to award her $16,885.50 in damages, which included the overcharge for the sunroom and the carpet as well as charges to repair the door in the sunroom, the rewiring of the Jacuzzi, the concrete patio and sidewalk replacement, and the brick repair. Miller also asked the court to award her $7,104.40 in attorney fees. The trial court awarded the damages and attorney fees that Miller re-quested, and entered judgment in favor of Miller on the Benges' counterclaim. The Benges appeal.

■■■ As neither party requested the trial court to enter special findings, we will treat the judgment as a general verdict and will affirm it if it can be sustained upon any legal theory consistent with the evidence. *Schwartz v. Gary Community School Corp.*, 762 N.E.2d 192, 196 (Ind.Ct. App.2002), *trans. denied.* In reviewing the trial court's judgment, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Walker v. Elkin*, 758 N.E.2d 972, 974 (Ind.Ct.App.2001). We will neither reweigh the evidence nor assess the credibility of the witnesses. *Id.*

■ The Benges first argue that the trial court erred in entering judgment in favor of Miller on the breach of contract and negligence counts. In a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner. *INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 576 (Ind.Ct.App.2003), *trans. denied*, (quoting *Homer v. Burman*, 743 N.E.2d 1144, 1147 (Ind.Ct.App.2001)). Negligent failure to do so is a breach of contract as well as a tort. *Id.*

Here, the Benges claim that they did not breach the contract and were not negligent because: 1) Benge told Miller that the brick he used was the closest match he could find, and she approved its use; 2) dimensions of room expansions are expressed in exterior rather than interior dimensions, and the exterior measurements of the sunroom are 20–feet by 20–feet; 3) the concrete patio and sidewalk were not defective; and 4) the sealer that the Benges placed on the sidewalk was the color that Miller wanted. These arguments, however, are nothing more than an

invitation for us to reweigh the evidence and assess the credibility of witnesses, which we cannot do. *See Walker*, 758 N.E.2d at 972. The trial court did not err in granting judgment in favor of Miller on the breach of contract and negligence claims.

The Benges next claim that the trial court erred in granting judgment in favor of Miller on her home improvement contracts act claim. The home improvement contracts act, ("the Act"), requires home improvement suppliers performing any alteration, repair, or modification to a residential home property in an amount greater than $150.00 to provide the customer with a home improvement contract. Ind. Code § 24–5–11–1; 24–5–11–3; 24–5–11–4; 24–5–11–6; 24–5–11–10. The Act also requires the following provisions to be included in the contract before it is signed by the consumer: 1) the name and address of the consumer and residential property; 2) the name and address of the home improvement supplier; 3) the date of the contract; 4) a reasonably detailed description of the work to be done; 5) the approximate start and stop dates; 6) a statement of contingencies that would materially change the approximate completion date; 7) the contract price; and 8) signature lines for the supplier and the consumer, with a legible printed or typed version of that person's name placed directly after or below the signature. Ind.Code § 24–5–11–10.

In addition, before the consumer signs the contract, the home improvement supplier must agree to the terms by signing the contract, and any modification to the contract is not enforceable unless it is both in writing and signed by the consumer. Ind.Code § 24–5–11–11 and—10. Finally, a home improvement supplier who violates the Act commits a deceptive act that is both actionable by a consumer under Ind. Code § 24–5–0.5–4 and subject to the remedies and penalties under Ind.Code § 24–5–0.5.

■ The purpose of the Act is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts. *Cyr v. J. Yoder*, 762 N.E.2d 148, 150 (Ind.Ct.App.2002). As we observed in *Mullis v. Brennan*, 716 N.E.2d 58, 65 (Ind.Ct.App.1999), few consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. The consumer's reliance on the contractor coupled with the well-known abuses found in the home improvement industry, served as an impetus for the passage of the Act, and contractors are therefore held to a strict standard. *Id.*

■ Here, our review of the exhibits and trial transcript reveals that none of the written contracts in this case included Miller's signature, an approximate start or completion date, or a statement of contingencies that would materially change the approximate completion date. Further, the contract for the kitchen renovation, including the installation of the laminate floor was not even in writing. In addition, it appears that other contract terms were orally modified and subsequently disputed. The Benges clearly violated the Act, and the trial court did not err in entering judgment in favor of Miller on the home improvement contracts act violation claim.[1]

---

1. We further note that the Benges' conclusory argument that Miller was not prejudiced by the violation is unavailing. First, we agree with Miller that a prejudice requirement is inconsistent with the plain language of the statute and the public policy behind it. *But see Mullis*, 716 N.E.2d at 65 (suggesting that some incidents of noncompliance, standing alone, are not sufficient to support a finding of a deceptive act because no prejudice result-

The Benges next argue that the trial court erred in entering judgment in favor of Miller on the home improvement fraud count. Specifically, he contends that because the trial court entered judgment against Miller on the fraud and constructive fraud counts, the court "necessarily rejected any claim that could have supported its entry of judgment [on the home improvement fraud count]." Appellant's Brief at 15.

■ Miller, however, correctly responds that although tort causes of action for fraud, constructive fraud, and home improvement fraud "share some overlapping elements, they are distinct tort theories with elements unique from each other." Appellee's Brief at 17. For example, to prove fraud and constructive fraud, the plaintiff must show a material misrepresentation of a past or existing fact. *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30 (Ind.Ct.App.2005). To prove home improvement fraud, however, the plaintiff can either show that the home improvement supplier either misrepresented a material fact or promised performance that he did not intend to perform, or used or employed deception to cause the plaintiff to enter into the contract, or entered into an unconscionable contract. Ind.Code § 35–43–6–12.

■ Further, to prove fraud or constructive fraud, the plaintiff must show that he relied on the material misrepresentation. *Wheatcraft*, 825 N.E.2d at 30. There is, however, no reliance requirement

in the home improvement fraud statute. Because the torts of fraud and constructive fraud have elements that are not found in the home improvement fraud statute, the court's failure to enter judgment in favor of Miller on the fraud and constructive fraud counts did not preclude the court from entering judgment in favor of Miller on the home improvement fraud count, and we find no error.

The Benges also argue that the trial court erred in granting judgment in favor of Miller on their counterclaim because Miller owes them an additional $4310.25. In support of their argument, the Benges direct us to the invoice they sent to Miller in May 2003 as well as Paul Benge's testimony that Miller still owed them $4310.25. Miller, on the other hand, denied owing the Benges that amount. In her calculation of damages, Miller credited the Benges with $2510.25, $1800.00 less than what the Benges requested in their counterclaim.

The trial court chose to believe Miller and awarded her the damages she sought, which included a $2510.25 credit to the Benges. Their argument is simply another invitation for us to judge the credibility of witnesses and reweigh the evidence. This we cannot do. *See Walker*, 758 N.E.2d at 972.[2] The trial court did not err in granting judgment in favor of Miller on the Benges' counterclaim.

Lastly, the Benges argue that the trial court erred in ordering them to pay Miller's attorney fees. Specifically, they con-

---

ed therefrom). Further, even if Miller was required to show prejudice, she has met this burden because several of the problems in this case would not have arisen had the Benges followed that Act and reduced everything to writing.

2. We again note that had the Benges complied with the home improvement contract act and memorialized all of their agreements with Miller as well as the subsequent changes thereto, it would have been much easier for them to present evidence in support of their counterclaim and for us to evaluate it.

tend that the trial court awarded fees to Miller pursuant to I.C. § 34–24–3–1 after the court found in favor of Miller on the home improvement fraud count,[3] and Ind. Code 24–5–0.5–4 after the court found in favor of Miller on the home improvement contracts count. According to the Benges, because this court should reverse the trial court's judgment in favor of Miller on these counts, Miller would no longer be entitled to attorney fees. However, we affirmed the court on these counts, and therefore also affirm the award of attorney fees.[4]

■ As a final matter, Miller argues that she is entitled to appellate attorney fees pursuant to IC § 34–24–3–1 and IC § 24–5–0.5–4, the same statutes that entitled her to attorney fees at trial. She is correct that that a plaintiff is entitled to attorney fees when she prevails under IC § 34–24–3–1, *Brown v. Brown,* 776 N.E.2d 394, 398 (Ind.Ct.App.2002), *trans. denied,* and IC § 24–5–11–1. *Mullis,* 716 N.E.2d at 67. Under both statutes, an award of attorney fees includes appellate attorney fees. *Brown,* 776 N.E.2d at 398 (attorney fees pursuant to IC § 34–24–3–1) and *Mullis,* 716 N.E.2d at 67 (attorney fees pursuant to IC § 24–5–0.5–4). We therefore remand this case to the trial court for a determination of appellate attorney fees generated in Miller's defense of the award of damages and attorney fees under the Home Improvement Fraud Act and the Home Improvement Contracts Act. *See Mullis,* 716 N.E.2d at 67.

Affirmed and remanded with instructions that the trial court determine the correct amount of appellate attorney fees.

ROBB, J., and MAY, J., concur.

---

**3.** Ind.Code § 34–24–3–1 provides that "if a person suffers a pecuniary loss as a result of a violation of IC 35–43, [which includes a violation of home improvement fraud], the person may bring a civil action against the person who caused the loss for … a reasonable attorney's fee."

**4.** The Benges do not challenge the reasonableness of the attorney fees.