**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 17 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STANTON**
Logansport, Indiana

ATTORNEY FOR APPELLEES:

**JOHN R. HILLIS**
Hillis Hillis Rozzi & Knight
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARGARET KILLION, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 09A04-1109-CT-513 |
| | ) | |
| JARROD KENDALL, d/b/a KENDALL KONTRACTING and JARROD KENDALL, Individually, | ) ) ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE CASS SUPERIOR COURT COURT
The Honorable Richard A. Maughmer, Judge
Cause No. 09D02-0902-CT-1

**July 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Margaret Killion (Killion), appeals the trial court's denial of her motion to correct error in the court's conclusion that Appellee-Defendant, Jarrod Kendall, d/b/a/ Kendall Kontracting, and Jarrod Kendall individually (Kendall), did not commit any fraud during Killion's home improvement project.

We affirm.

## ISSUES

Killion raises two issues on appeal, which we consolidate and restate as the following single issue: Whether Kendall's statements to Killion and his conduct during the project support a finding of fraud under the Home Improvement Fraud Act.

## FACTS AND PROCEDURAL HISTORY

In the early summer of 2008, Killion, at the time seventy-seven years old, decided to make some improvements to her residence, located in Logansport, Indiana. The project would include new siding, new doors and windows, a sunroom addition, a new bathroom shower and tile, a new garage door, and new posts supporting the front porch. Killion initially contacted Bob Brown (Brown), a general contractor, to perform the work. Brown was not interested in the project and referred her to Kendall.

In July of 2008, Killion phoned Kendall and they discussed in general terms the work to be performed on Killion's home. Later that month, Kendall travelled from Lafayette to Logansport to view her residence. Prior to hiring Kendall, Killion inquired about his experience in home improvement projects. Kendall handed Killion his business

2

card and indicated that he had worked for Brown prior to incorporating his own contracting business in March 2008. During his conversation with Killion, Kendall represented that the project would be a "piece of cake" and that he had the expertise necessary to complete the work. (Transcript p. 24). Kendall gave Killion a total estimated project cost of approximately $30,000. At the time of the meeting, Kendall was twenty-one years old and was not bonded. Although he held himself out to be a general contractor, he was not licensed as such because a license "was not required where [he] practiced." (Tr. p. 253).

At some point after the meeting in July of 2008, Kendall drafted some documents which he presented to Killion. Throughout the project, Kendall continued to draft documents to address changes made to the home improvement project. Some of these documents were signed by Killion; others were not. Kendall started the project in late July of 2008, and even though it was generally "advised" to obtain a home improvement permit prior to commencing the work, he did not do so. (Tr. p. 253).

During the project, Killion expressed concern with the quality of Kendall's work. Specifically, she expressed dissatisfaction, among others, about the siding on the house which was not level, the garage door which was improperly installed, the front and rear door of the house which did not close, and the furnace which stopped working because Kendall had cut off and improperly re-routed the exhaust pipe. Also during the project, Kendall removed the gutters and soffit from the residence and failed to re-install them. She noted that Kendall would not work more than two hours for two or three days each week. During the work on the residence, Kendall rented a "lift" which proved to be

3

unnecessary. When Killion expressed her concerns to Kendall, he told her that he would repair his work to her satisfaction—he never did.

After experiencing continuing problems with Kendall's poor workmanship, his failure to correct the defects, and the inappropriate amount of time he spent on the jobsite, Killion decided to release Kendall on September 24, 2008. At the time of the termination, Killion had paid Kendall more than $34,700.

On February 18, 2009, Killion filed her Complaint for damages against Kendall alleging breach of contract, negligent or poor workmanship, fraud under the Home Improvement Fraud Statute, and a violation of the Indiana Home Improvement Contract Statute. On June 24, 2010, Kendall filed his notice of bankruptcy and the cause was stayed. On October 27, 2010, Killion filed her motion to set trial date, which was granted by the trial court. On May 5, 2011, a bench trial was conducted.

At the trial, Kendall testified that Killion's project was the first new construction work that he had undertaken. He stated that while he was working on the project, he also re-roofed another client's house and performed some small jobs for another customer. During his testimony, he admitted to covering up the exhaust pipe on Killion's furnace and not getting an improvement permit for the project. He also stated that approximately one year prior to trial, he discovered he owed Killion $7,274 and admitted that he had not yet refunded her the money.

Lawrence Vail (Vail), a general contractor, testified that he was contacted by Kendall to install the foundation for the sunroom addition to Killion's home. Vail explained that he had met Kendall when they both worked for Brown. Vail clarified that

at that time, Kendall worked as a "third hand," an assistant to get material, clean up, and to generally help out. (Tr. p. 80). He stated that he was surprised to get a phone call from Kendall because he did not realize that Kendall was performing general construction work. Vail opined that based on his observation of the work that Kendall had completed on Killion's house, Kendall "seemed like he was out of his league," and did not appear to know what he was doing. (Tr. p. 106). After Killion released Kendall from the project, she hired Vail to complete the work. Vail testified that Killion paid him $15,800 to perform work that Kendall was supposed to have completed.

On May 12, 2011, the trial court entered an Order, finding and concluding in pertinent part that:

> 36.    [Kendall] desired to successfully complete [Killion's] home improvement project and incorrectly assumed that he had the ability to complete [Killion's] home improvement project.
>
> * * *
>
> 48. [Killion] did ask [Kendall] to fix some discrepancies [Killion] noticed during the project prior to [Kendall's] termination. [Kendall] failed to fix any of said discrepancies.
>
> 49.    [Kendall] is a home improvement supplier subject to the Home Improvement Contract Act (HICA).
>
> 50. [Kendall] drafted the four written agreements [].
>
> 51. None of the agreements meet the standard provided for in I.C. [§] 24-5-11-10(4).
>
> 52. [Kendall's] failure to comply with I.C. [§] 24-5-11-10(4) is a deceptive act per the HICA.

53. While the court concludes that [Kendall] was incompetent in this matter, [Kendall] did not engage in willful deceptive behavior with the intent to defraud or mislead [Killion].

54. [Killion] did not give [Kendall] written notice of problems observed with [Kendall's] workmanship, and the record is vague how much verbal notice [Killion] gave [Kendall] to fix the discrepancies prior to terminating [Kendall] from the project.

55. Neither party complied with I.C. [§] 32-27-3-1.[1]

56. [Killion's] damages caused by [Kendall] are $23,575.94 and [Killion] is entitled to a judgment in the same amount, to wit: Twenty three thousand five hundred seventy five dollars and ninety four cents against [Kendall].

(Appellant's App. pp. 18-19).

On June 10, 2011, Killion filed her motion to correct error and motion for clarification, asserting that the evidence presented at trial established that (1) Kendall had intentionally committed fraud under the Home Improvement Fraud Act and (2) Kendall's retention of Killion's money constituted willful misconduct. On September 1, 2011, after conducting a hearing, the trial court denied Killion's motion to correct error and motion for clarification.

Killion now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

---

[1] I.C. § 32-27-3-1 refers to the definition section of the Notice and Opportunity to Repair Chapter of the Construction Warranties Article of the Property Title. We believe that the trial court in general meant to refer to the fact that neither party followed the provisions of the Notice and Opportunity to Repair Chapter.

A trial court has discretion to grant or deny a motion to correct error and we reverse its decision only for an abuse of that discretion. *Hawkins v. Cannon*, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

## II. *The Home Improvement Fraud Statute*

Killion contends that the trial court abused its discretion by concluding that Kendall did not commit fraud under the Home Improvement Fraud Statute. The Home Improvement Fraud Statute provides, in pertinent part, that

> (a) A home improvement supplier who enters into a home improvement contract and knowingly:
>
> * * *
>
> (2) creates or confirms a consumer's impression that is false and that the home improvement supplier does not believe to be true;
>
> * * *
> (4) uses or employs any deception, false pretense, or false promise to cause a consumer to enter into a home improvement contract
>
> * * *
>
> commits home improvement fraud, a Class B misdemeanor[.]
>
> (b) A home improvement supplier who, with the intent to enter into a home improvement contract, knowingly:
>
> * * *
>
> (2) does work on the property of a consumer without the consumer's prior authorization;
>
> * * *

7

commits a Class A misdemeanor[.]

I.C. §§ 35-43-6-12(a)(2), (4); -(b)(2). Indiana Code section 34-24-3-1 permits customers to maintain a civil cause of action against home improvement suppliers for a violation of the Home Improvement Fraud Statute.

Although the tort causes of action for fraud, constructive fraud, and home improvement fraud share some overlapping elements, they are distinct tort theories with elements unique from each other. *Benge v. Miller*, 855 N. E.2d 716, 721 (Ind. Ct. App. 2006). For example, to prove fraud and constructive fraud, the plaintiff must show a material misrepresentation of a past or existing fact. *Id.* To prove home improvement fraud, the plaintiff can either show that the home improvement supplier misrepresented a material fact or promised performance that he did not intend to perform, or used or employed deception to cause the plaintiff to enter into the contract or entered into an unconscionable contract. *Id.* Further, to prove fraud or constructive fraud, the plaintiff must show that he relied on the material misrepresentation. *Id.* There is, however, no reliance requirement in the Home Improvement Fraud Statute. *Id.*

With respect to the claim of fraud, Killion makes a two-fold allegation. First, she argues that Kendall's statements, representing himself to be a general contractor and that the project would be easy to complete, support a finding of fraud under the Home Improvement Fraud Statute. Secondly, she asserts that Kendall's knowing failure to return $7,274.00 that he admittedly owed Killion, constituted theft "and as such would

8

constitute willful deceptive behavior with the intent to defraud or mislead [Killion]." (Appellant's Br. p. 13). We will analyze each contention in turn.

## A. *Kendall's Statements*

Because there is no reliance requirement in the Act, Killion's argument that she relied on Kendall's statements to hire him for the work necessarily fails. Even if we were to rephrase her argument in terms of misrepresentations of material fact or false promises, *i.e.*, Kendall knowingly misrepresented or promised that he could perform the work, her claim is equally unsuccessful.

At the time of the initial meeting between Killion and Kendall, Kendall was twenty-one years old and was not bonded. Prior to hiring Kendall, Killion inquired about his experience in home improvement projects. Although Killion first contacted Brown to perform the work, Brown was not interested but recommended that she contact Kendall. Kendall had previously worked for Brown prior to incorporating his own business in March 2008. When they met, Kendall handed Killion his business card and confirmed that he had worked for Brown. During his conversation with Killion, Kendall represented that the project would be a "piece of cake" and that he had the expertise necessary to complete the work. (Tr. p. 24).

While the record contains evidence indicating that Kendall was inexperienced and optimistic about his skills necessary to perform the work, Killion does not present any evidence establishing that Kendall knowingly misrepresented his prior experience or promised work which he did not intend to perform. We agree with the trial court's

finding that did he not engage in willful deceptive behavior with the intent to defraud. Therefore, the trial court properly denied Killion's motion to correct error.

B. *Theft*

Additionally, Killion asserts that Kendall's knowing failure to return $7,274.00 that he owed Killion, constituted theft, which in turn points to a willful deception with the intent to defraud her. Again, we disagree.

Even though Kendall admitted that he owed Killion the money, he also stated that he "was trying from the start to [] give her everything back that she was deserving." (Tr. p. 251). At no point did Kendall ever deny that he owed Killion additional money or refused to return the amount. Therefore, we cannot conclude that the trial court abused its discretion when it denied Killion's motion to correct error.

CONCLUSION

Based on the foregoing, we conclude that the trial court properly determined that Kendall's statements to Killion and his conduct during the project did not support a finding of fraud under the Home Improvement Fraud Act. Therefore, the trial court did not abuse its discretion when it denied Killion's motion to correct error.

Affirmed.

NAJAM, J. and DARDEN, J. concur

10