

IN THE

# Court of Appeals of Indiana

Jacob Balash and Jonathan Balash,

*Appellants-Defendants,*



FILED

Oct 08 2024, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Steve Mader,

*Appellee-Plaintiff.*

---

October 8, 2024

Court of Appeals Case No.
24A-SC-792

Appeal from the
Owen Circuit Court

The Honorable
Darrin M. Dolehanty, Senior Judge

Trial Court Cause No.
60C02-2310-SC-116

**Baker, Senior Judge.**

## Statement of the Case

[1] In this home improvement case, Jacob and Jonathan Balash (the Balashes) appeal the court's judgment entered in favor of contractor Steve Mader, claiming it is contrary to law. Specifically, the Balashes contend the small claims court's award of damages to Mader is erroneous because Mader failed to provide the Balashes with a written contract in accordance with the Home Improvement Contracts Act. Concluding that Mader's dealings with the Balashes fell within the scope of the Act and that Mader consequently cannot recover damages from the Balashes, we reverse with instructions.

## Facts and Procedural History

[2] The facts most favorable to the judgment are that in the spring of 2023, the Balashes hired Mader to drill a new well on their property and cap off the existing well for an estimated cost of $10,000 - $15,000. There was no written agreement memorializing the work to be done, the cost of such work, or any details associated with the project. Mader began work on the new well at the end of June. Complications ensued with the drilling of the new well, and Mader was unable to complete the work. He stopped work in mid-July, and the

Balashes hired a different contractor to install a new well and cap both the old one and the one Mader had begun drilling.

[3]     At the beginning of August, Mader returned to the Balash property to discuss payment for the work he had done, but the parties did not reach an agreement. The following month the Balashes received an invoice from Mader in the amount of $8,280. Although the Balashes made an offer to settle, Mader ultimately filed this action in small claims court. Following a bench trial, the court entered judgment for Mader in the amount of $8,280 plus court costs. The Balashes moved to correct error, which the court denied. This appeal ensued.

## Discussion and Decision

[4]     Small claims actions involve informal trials where the sole objective is to dispense speedy justice between the parties according to the rules of substantive law. *Harvey v. Keyed In Prop. Mgmt., LLC*, 165 N.E.3d 584, 587 (Ind. Ct. App. 2021), *trans. denied*. We will reverse the judgment of a small claims court only upon clear error. *Wang v. Sun*, 212 N.E.3d 1252, 1256 (Ind. Ct. App. 2023). In our review, we consider only the evidence most favorable to the judgment, and we neither reweigh the evidence nor assess witness credibility. *Nick's Packing Servs., Inc. v. Chaney*, 181 N.E.3d 1025, 1028 (Ind. Ct. App. 2021). However, this deferential standard does not apply to substantive rules of law, which we review de novo. *Wang*, 212 N.E.3d at 1256.

[5] The Balashes contend the court's judgment in favor of Mader is clearly erroneous because Mader's claim is based on an oral agreement for residential real property improvements in violation of the Home Improvement Contracts Act. *See* Ind. Code §§ 24-5-11-1 to -14. As this Court has explained,

> [t]he purpose of the Act is to protect consumers by placing specific minimum requirements on the contents of home improvement contracts. . . . [F]ew consumers are knowledgeable about the home improvement industry or of the techniques that must be employed to produce a sound structure. The consumer's reliance on the contractor coupled with the well-known abuses found in the home improvement industry, served as an impetus for the passage of the Act, and contractors are therefore held to a strict standard.

*Benge v. Miller*, 855 N.E.2d 716, 720 (Ind. Ct. App. 2006) (internal citations omitted).

[6] Within the Act, a "consumer" is "a person that owns, leases, or rents the residential real property that is the subject of a real property improvement contract." I.C. § 24-5-11-2 (2017). The Act defines "real property improvement" as "any alteration, repair, replacement, reconstruction, or other modification of residential real property." I.C. § 24-5-11-3(a) (2017). In addition, a "real property improvement supplier" is defined as "a person who engages in or solicits real property improvement contracts whether or not the person deals directly with the consumer." I.C. § 24-5-11-6 (2017). And the Act defines a "real property improvement contract" as "an agreement, oral or written, between a real property improvement supplier and a consumer to make

a real property improvement and for which the real property improvement contract price exceeds one hundred fifty dollars ($150)." I.C. § 24-5-11-4 (2017).

The heart of the Act, Section 24-5-11-10(a), mandates that suppliers provide a completed contract to the consumer before it is signed by the consumer. The section further requires that the contract contain, at a minimum:

> (1) The name of the consumer and the address of the real property that is the subject of the real property improvement.
>
> (2) The name, address, and email address of the real property improvement supplier.
>
> (3) The name, telephone number, and email address for each owner, officer, employee, or agent of the real property improvement supplier to whom consumer problems and inquiries can be directed.
>
> (4) The date the real property improvement contract was submitted to the consumer and any time limitation on the consumer's acceptance of the real property improvement contract.
>
> (5) A reasonably detailed description of the proposed real property improvements.
>
> (6) If the description does not include the specifications for the real property improvement, a statement that the specifications will be provided to the consumer before any work is commenced under the real property improvement contract and that the real

property improvement contract is subject to the consumer's separate written and dated approval of the specifications.

(7) The approximate starting and completion dates of the real property improvements.

(8) A statement of any contingencies that would materially change the approximate completion date.

(9) The real property improvement contract price.

(10) A statement as to whether any third party, including any subcontractor, vendor, or other person that is not a party to the contract, will lease or furnish any labor, services, material, equipment, or machinery to, or on behalf of, the real property improvement supplier in connection with the real property improvement.

(11) Signature lines for the real property improvement supplier or the supplier's agent and for each consumer who is to be a party to the real property improvement contract with a legible printed or a typed version of that person's name placed directly after or below the signature.

*See id.*

[8] We pause here to note the internal discrepancy between Section 24-5-11-4, providing that a real property improvement contract may be *oral or written*, and Section 24-5-11-10(a), mandating that the supplier provide the consumer with a completed contract *before it is signed* and listing the specific minimum requirements to be contained in the contract, including signature lines for the

supplier and the consumer with printed or typed versions of their names. Further, Section 24-5-11-10(b) requires the contract to "be in a form that each consumer who is a party to it can reasonably read and understand."

[9] A panel of this Court recently recognized this discrepancy and determined that, with its "unmistakable specificity," Section 24-5-11-10(a) controls. *See Logan v. Evans*, 230 N.E.3d 371, 381 n.4 (Ind. Ct. App. 2024) (noting discrepancy, recognizing tenet that specific statutory provision takes priority over general one, and concluding that I.C. § 24-5-11-10(a)(10) "specifically and unambiguously requires that a real property improvement contract be in writing and signed by both the supplier and the customer"). Accordingly, a real property improvement contract must be in writing and signed by both parties. *Id.* (citing I.C. § 24-5-11-10(a)(10)); *see also* I.C. § 24-5-11-10.6 (2017) (referring to contract being signed by consumer and supplier); I.C. § 24-5-11-11 (2017) (requiring supplier to agree to terms of contract by "written signature" before consumer signs contract); I.C. § 24-5-11-12 (2017) (requiring supplier to give "fully executed copy" of contract to consumer "immediately after the consumer signs it"), *and see McGraw Prop. Sols., LLC v. Jenkins*, 159 N.E.3d 991, 996 (Ind. Ct. App. 2020) (stating that Act requires suppliers to provide consumer with written contract).

[10] In the present case, Mader is undeniably a real property improvement supplier who was hired by the Balashes to perform real property improvements, the cost of which exceeded $150. It is also undisputed that Mader never provided a written contract to the Balashes and that they never signed a contract with

Mader or executed any documents that would have satisfied the minimum statutory contract requirements.

[11] Under the Act, it was Mader's burden to supply the Balashes with a written contract. *See* I.C. § 24-5-11-10(a) ("A real property improvement supplier *shall provide* a completed real property improvement contract to the consumer before it is signed by the consumer.") (emphasis added). Mader failed to do so, and, as such, he violated the Act. Therefore, Mader cannot enforce the oral agreement against the Balashes. *See Ambrose v. Dalton Const., Inc.*, 51 N.E.3d 320, 322 (Ind. Ct. App. 2016) (stating that violation of Act makes contract unenforceable against consumer) (opinion on reh'g), *trans. denied*. Consequently, the trial court's award of damages to Mader is clearly erroneous and must be set aside. *See Cyr v. J. Yoder, Inc.*, 762 N.E.2d 148, 152 (Ind. Ct. App. 2002) (setting aside damage award in favor of contractors because they violated Act by failing to have consumer sign contract). Our holding reflects our continued mindfulness that the Act was passed to protect consumers from abuse and that contractors are therefore held to a strict standard. *See Benge*, 855 N.E.2d at 720.

## Conclusion

[12] Thus, in light of the foregoing, we conclude that Mader's dealings with the Balashes were governed by the Act and that the damage award entered for Mader must be set aside.

[13] Reversed with instructions to vacate the judgment for Mader.

Vaidik, J., and Brown, J., concur.

ATTORNEY FOR APPELLANTS

Hannah L. England
England Law Office, P.C.
Spencer, Indiana

APPELLEE PRO SE

Steve Mader
Spencer, Indiana