# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 04 2016, 6:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of: A.K., A Child in Need of Services: | October 4, 2016 |
| | Court of Appeals Case No. 67A01-1605-JC-1111 |
| J.K. (Father), | |
| *Appellant-Respondent,* | Appeal from the Putnam Circuit Court |
| v. | The Honorable Joseph D. Trout, Special Judge |
| The Indiana Department of Child Services, | Trial Court Cause No. 67C01-1506-JC-68 |
| *Appellee-Petitioner.* | |

**Bradford, Judge.**

# Case Summary

[1] On March 26, 2016, A.K. ("Child") was determined to be a Child in Need of Services ("CHINS") after Appellee-Petitioner the Department of Child Services ("DCS") received a report which indicated that the Child may be the victim of abuse or neglect. Appellant-Respondent J.K. ("Father") appeals from this determination, arguing that his due process rights were violated and that the juvenile court abused its discretion in admitting certain evidence during the fact-finding hearing. Concluding that Father has failed to establish that he suffered a violation of his due process rights or that the juvenile court abused its discretion in admitting the challenged evidence, we affirm the judgment of the juvenile court.

# Facts and Procedural History

[2] Father has a substantiated history with DCS dating back to 2004. At all times relevant to the instant appeal, Father and A.P. ("Mother") were engaged in a romantic relationship. Father and Mother (collectively, "Parents") have a number of children together, including Child who was born in June of 2015. At the time Child was born, Parents were parties to an ongoing CHINS case involving their other children. The other children had previously been removed from Parents' home and were placed in a relative foster care.

[3] On June 18, 2015, after learning that Mother had become pregnant with and given birth to Child, DCS personnel, accompanied by law enforcement and the

therapist assigned to work with Parents in the ongoing CHINS case, went to the family's residence to conduct a child-welfare check. DCS personnel had previously attempted to conduct a child-welfare check on June 15, 2015, but neither Father nor Mother would answer the door. Prior to arriving at Parents' home, DCS personnel obtained an emergency order to remove Child from Parents' home. This decision was made due to Parents non-compliance with the services offered and lack of progress made in the ongoing CHINS case, which resulted in a failure to remedy the reasons for the removal and continued custody of Parents' other children.

[4] After DCS personnel arrived at Parents' home, DCS personnel observed Father remove a gun from a cabinet. While still in possession of the gun, Father barricaded himself in a room with Mother and Child. An approximately fifteen-hour standoff between law enforcement officials and Parents followed, during which time Parents remained inside their residence with Child. At some point during the standoff, Mother became belligerent and refused to cooperate, and Father indicated that he planned to carry out "suicide by cop" stating that he had "six rounds and one for the Chief of Cloverdale." Appellant's App. Vol. 2 p. 15. Eventually, Parents exited their residence and surrendered to law enforcement on the condition that Child would be released to Mother after being examined at a local hospital. Father was then arrested on preliminary charges of resisting law enforcement and neglect of a dependent.

[5] On June 22, 2015, DCS filed a petition alleging that Child was a CHINS. Also on June 22, 2015, the juvenile court held an initial/detention hearing. At the

conclusion of this hearing, the juvenile court ordered that Child shall remain in the home with Mother provided that (1) Father have no contact with Mother or Child, (2) no one shall be allowed to provide care for Child unless that person has been approved by DCS, and (3) in order to protect the privacy of Child, the parents not post information about the case on social media or other internet sites.

[6] The juvenile court conducted a two-day fact-finding hearing on December 8, 2015, and January 26, 2016, after which it adjudicated the Child to be a CHINS. The juvenile court subsequently held a dispositional hearing after which it ordered Father to participate in certain services. This appeal follows.

# Discussion and Decision

## I. Due Process

[7] Father contends that his due process rights were violated when the juvenile court issued an emergency order allowing for the Child's removal from his and Mother's care. "Due process protections bar state action that deprives a person of life, liberty, or property without a fair proceeding." *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (internal quotation omitted). "Due process requires 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *In re K.D.*, 962 N.E.2d 1249, 1257 (Ind. 2012) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The Indiana Supreme Court has previously held that the process due in a CHINS adjudication turns on the balancing of the three factors set forth in *Mathews*: (1) the private interests affected by the proceeding; (2) the

risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *Id.* (citing *Mathews*, 424 U.S. at 335); *see also In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011).

[8] With respect to emergency orders for removal of a child from her parents' care, Indiana Code section 31-32-13-7 provides as follows:

> If:
>> (1) the juvenile court determines on the juvenile court's review of the record that an emergency exists; *or*
>> (2) the moving party demonstrates by sworn testimony or affidavit that an emergency exists;
> the juvenile court may issue an emergency order without a hearing.

(Emphasis added). On appeal, Father argues only that the juvenile court erred in issuing the emergency order because the moving party, *i.e.*, DCS, did not demonstrate by sworn testimony or affidavit that an emergency existed. Father, however, makes no argument as to whether the juvenile court determined that an emergency existed after reviewing the court's record.

[9] Review of the record demonstrates that the special judge assigned to preside over the underlying CHINS proceedings allowed Father to question the judge who granted the emergency order ("the emergency hearing judge") during the

second day of the evidentiary hearing.[1]  The record reveals that upon being questioned by Father as to why he issued the emergency order, the emergency hearing judge explained as follows:

> On the grounds that your other children had already been removed, that you were refusing to let the DCS see the newborn baby, that the mother of the child -- they didn't even know that she was pregnant, didn't even know anything about it, and so there were great concerns that you had previously abused your other children, that maybe you might (indiscernible) this child as well.…  I'm pretty sure that there was a lot of things going on at that time, [Father], but because you had already [had] your other children removed from your care, and that you had, I believe you were refusing to allow them to even have access to the child, that they came and asked about that, so I had at that time did say "yes" you know and we got that kind of problem going on[.]

Tr. p. 270.  The emergency hearing judge further stated that at the time he issued the emergency order, the problem was that "[n]o one knew whether we were … fine or not because … you would not allow any kind of access to the child." Tr. p. 271.  The emergency hearing judge's answers to the questions posed by Father indicate that he considered the court's record, as contemplated by Indiana Code section 31-32-13-7(1), in making the decision to grant the emergency order.

---

[1]  Although Father was represented by counsel during the evidentiary hearing, the record indicates that Father requested permission to question the emergency hearing judge and a few other witnesses whom he wished to call despite the fact that his counsel refused to call these witnesses and engage in the line of questioning desired by Father.

[10]     In addition, the record indicates that during his questioning of the emergency hearing judge, Father pressed the emergency hearing judge as to whether he felt the Child should be found to be a CHINS. When pressed by Father, the emergency hearing judge acknowledged that, while his opinion was not relevant as he was no longer the judge overseeing the case, he believed that the Child was a CHINS. When further pressed by Father as to why he held this opinion, the emergency hearing judge stated the following:

> Because you go through episodes of clarity. And also you go through episodes of madness. And you go up and down all over the place in your past history. You've had domestic abuse charges and allegations against you. You've had your one boy removed from you. You've had the other kids removed by me. And you know. There's just a huge concern about your mental stability.

Tr. p. 286. This statement further indicates the emergency hearing judge's knowledge of the potential for an emergency situation when it issued the emergency order.

[11]     The emergency hearing judge's testimony demonstrates that he considered information known to him from the court's records before granting the emergency order. Thus, the emergency hearing judge satisfied the requirements of Indiana Code section 31-32-13-7. Further, in light of the emergency hearing judge's testimony relating to what information he considered before granting the emergency order, we conclude that Father has failed to establish that the emergency hearing judge's records relating to the family were insufficient to

support his determination that an emergency existed which would justify an emergency order for removal of the Child from her parents' care. Father, therefore, has also failed to establish that his due process rights were violated when the emergency hearing judge issued the emergency order.

## II. Admission of Evidence

[12] Father also contends that the juvenile court abused its discretion in admitting certain evidence during the evidentiary hearing. For its part, DCS contends that the juvenile court did not abuse its discretion in this regard. Evidentiary determinations are committed to the juvenile court's discretion, and we will reverse that determination only upon a showing of an abuse of discretion. *Matter of J.L.V., Jr.*, 667 N.E.2d 186, 189 (Ind. Ct. App. 1996) (citing *Columbian Rope Co. v. Todd*, 631 N.E.2d 941, 943 (Ind. Ct. App. 1994), *trans. dismissed*).

[13] Father argues that the juvenile court abused its discretion by admitting evidence of his prior DCS history and related criminal charges. Review of the record, however, demonstrates that Father, himself, introduced evidence relating to his prior history with DCS and of his related criminal charges.[2] It is well-established that "[a] party cannot complain of action he himself invites." *White v. State*, 222 Ind. 423, 427, 54 N.E.2d 106, 107 (1944). Father, therefore, cannot

---

[2] Father introduced this evidence during his direct examination of the emergency hearing judge and the Owen County Deputy Prosecutor.

demonstrate that the juvenile court abused its discretion in allowing DCS to introduce substantially similar, if not identical, evidence.

[14] Further, we have previously concluded that admission of evidence regarding a parent's prior involvement with DCS, including evidence of prior CHINS proceedings involving other children, is in accordance with relevant statutory authority and the Rules of Evidence.[3] *Matter of J.L.V., Jr.*, 677 N.E.2d at 191. Evidence of Father's prior history with DCS, including evidence relating to active CHINS cases involving the couple's other children and a lack of progress made by Father in those cases, is relevant to the instant concerns surrounding whether the Child is a CHINS. Specifically, this evidence is relevant because it demonstrates that Father has engaged in a pattern of child abuse and neglect and that concerns relating to this pattern of abuse and neglect have yet to be rectified. For this additional reason, we conclude that the juvenile court did not abuse its discretion in allowing for the admission of evidence relating to Father's prior history with DCS and his related criminal charges.

[15] The judgment of the juvenile court is affirmed.

---

[3] In the *Matter of J.L.V., Jr.*, we considered whether admission of evidence of a parent's prior involvement with DCS was in accordance to Indiana Code section 31-6-7-13 which was the predecessor of the current applicable code section, Indiana Code section 31-34-12-5. Seeing as the language of then-Indiana Code section 31-6-7-13 is substantially similar to the language of Indiana Code section 31-34-12-5, we see no reason why our conclusion in the *Matter of J.L.V., Jr.* would not also apply to a consideration of admissibility of such evidence under Indiana Code section 31-34-12-5.

Pyle, J., and Altice, J., concur.